[Civ. No. 3238.   Fourth Dist.   Jan. 5, 1944.]

JOHN STEWART, Respondent, v. SANTA ROSA MINING COMPANY (a Corporation), Appellant.

Fred W. Heath for Appellant.

Jess G. Sutliff for Respondent.

BARNARD, P. J.—This is an action on a note for $5,000 given to the plaintiff by the Santa Rosa Mining Company, which will be referred to as the mining company.

In 1933, the plaintiff and one Duncan located four mining claims in Inyo County, known as the Empress Nos. 1 to 4. On June 23, 1938, the plaintiff and Duncan sold these claims to the mining company, of which J. R. LeCyr was president and manager, and the mining company as part of the consideration gave to the plaintiff two notes for $2,500 each, secured by a mortgage on the Empress claims. The mining company did not pay these notes and did not perform the annual assessment work on these claims for the year ending June 30, 1939.

On September 1, 1939, one Howell, who had been prospecting with the plaintiff, attempted to locate the same claims calling them the "Wide West Nos. 1 to 4," his notice of location stating that they were a relocation of the Empress claims. Later that same day J. R. LeCyr went to the property and found the Howell location notices, on each of which he wrote "This location is void and fraudulent." He then attempted to locate a claim called the "Ethel," which covered a portion of the other claims. Having learned of LeCyr's action, Stewart and Howell went to Los Angeles and contacted LeCyr on September 3, 1939. A heated argument ensued with mutual accusations of "claim jumping." LeCyr told the others that in locating the "Ethel" he was trying to protect the mining company as well as them. The parties then talked over an agreement with the idea of settling the dispute and avoiding litigation. Two days later a written agreement which had been prepared by LeCyr for this purpose, was executed.

This agreement, dated September 5, 1939, recited that it was between the mining company on the one hand and Stewart, Duncan and Howell on the other hand. It provided that the mining company was to purchase and the others to sell for the sum of $15,000 the Ethel claim located by LeCyr and the Wide West claims Nos. 1 to 4 located by Howell, that the company was to pay for said claims by executing and delivering a $5,000 note to Stewart, another $5,000 note to Howell, a $2,500 note to Duncan, a $2,500 note to Duncan's wife, and a mortgage on the property securing these notes. The agreement then provided that Harold J. Goldman should act as escrow holder; that the mining company should pro-

cure and deposit in this escrow a quitclaim deed from J. R. LeCyr conveying to it the Ethel claim; that Howell should deposit in the escrow a deed conveying to the mining company the Wide West claims; that Stewart and Duncan would deposit in the escrow promissory notes which had been given them by the mining company in connection with the purchase of the Empress claims in 1938, together with a satisfaction of the mortgage which had then been given to secure said notes; that all of these documents should be deposited in escrow in twenty days; that if this was not done any party thereto might cancel the agreement and receive back the documents which he had deposited in escrow; and that when all these documents were deposited in escrow the escrow holder should deliver the deeds to the mining company and the notes to the respective sellers with the mortgage given to secure the new notes. The agreement further provided that the mining company should have the option to apply 25 per cent of the net smelter returns from ore produced or 20 per cent of money received from the sale of securities to the payment of the notes, provided that it should keep at least one hundred 8-hour shifts per month working upon the property throughout the life of the mortgage. The agreement was signed by the mining company and by Howell.

All of these instruments were executed and deposited in escrow with Goldman, as provided in the agreement, although this was not completed within twenty days. However, none of the parties sought to cancel the agreement because of any delay in this regard. It is not contended that the mining company ever worked one hundred 8-hour shifts per month on the property or ever attempted to exercise its option to apply a portion of the smelter returns or a portion of the money received from the sale of securities to the payment of the note here in question.

The mining company failed to do the assessment work on these claims and made no payment on the $5,000 note to the plaintiff which had thus been placed in escrow. On July 21, 1940, J. R. LeCyr, his brother and another officer of the mining company attempted to relocate a portion of the ground covered by these other claims, naming this location the "Hillside." On September 26, 1941, the plaintiff filed an action on the notes aggregating $5,000 which had been given him by the mining company on the first purchase of the property in 1938. After that action was filed he wrote to the escrow

holder telling him not to record any papers pertaining to his pending suit without his permission. Judgment in that action was in favor of the mining company, the court holding that these notes had been superseded by the $5,000 note executed under the agreement of September 5, 1939, and placed in escrow. The plaintiff then brought the present action on the latter note alleging that Goldman was holding this note for his use and benefit, and that since the mining company had failed to do the necessary work upon the property the security of the mortgage was lost and had become worthless.

In this action Goldman, the escrow holder, was named as a defendant. He answered, among other things, that he was holding said $5,000 note as an escrow and that he would deliver it either to the court or to either party if so instructed by the court. Before the trial the plaintiff moved, on due notice, to have the escrow holder required to produce the note and deposit it with the clerk. This motion was heard on affidavits of the respective parties and the court ordered the note produced and filed with the clerk. On the trial of the action the court found in all respects in favor of the plaintiff and entered judgment for him, from which the mining company has appealed.

As admitted by the appellant in its reply brief, the only questions here involved are whether there was a consideration for this note and whether there was a sufficient delivery thereof. The appellant contends that there was no consideration for the note because Howell's location of the Wide West claims on September 1, 1939, was void for several reasons, and because the deed placed in escrow by Howell did not and could not convey a full and complete legal title since his original locations were void, and since he had not performed the necessary discovery work. LeCyr testified that he discovered the defects in the Howell notices of location, of which complaint is now made, when he visited the property later in the day on September 1, 1939, and before he made his attempted location on that day. He therefore knew of all of these defects before the agreement of September 5, 1939, was entered into. While he also testified that when the parties began to discuss a settlement on September 3, 1939, he proposed that Howell should correct his location notices, should do the discovery work and should put himself in a

position to convey a good title to the claim, there is much evidence to the contrary and the contract which was later signed, and which was prepared by LeCyr, is entirely different. Under that contract the mining company was purchasing the claims as they then were (it having already purchased the original Empress claims), and was to pay for the same by giving these notes through the escrow which was to be completed within twenty days and long before the discovery work was required to be done. Howell did not agree to do any work on the property and that duty was clearly assumed by the mining company under the terms of the contract. If the property was lost, as is now claimed, it was entirely the fault of the appellant in failing to do the necessary work. The mining company received exactly what it was to receive under the terms of the written agreement, and the respondent surrendered the original notes for $5,000 and gave a satisfaction of the mortgage which he had received upon the first sale of the property to the appellant in 1938. An ample consideration for the new notes appears.

All of the required papers had been placed in escrow and in accordance with the terms of the agreement the note here sued upon should have been delivered to the respondent by the escrow holder. While he was reluctant to do so without the protection of a court order the court took the necessary steps in that regard and there was a sufficient delivery of the note for all the purposes of this action.

Other points raised by the appellant in its opening brief require no consideration. These are based upon a misconstruction of the agreement of September 5, 1939, or upon a portion of the testimony in complete disregard of other evidence which conflicts therewith. If there is anything that even tends to indicate that the respondent is not entitled to recover on this note, either morally or legally, we have been unable to find it in the record.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1944.