[Civ. No. 12904.   First Dist., Div. Two.   Jan. 14, 1946.]

LEWIS E. BOGAN, Appellant, v. JAMES FRANCIS
WILEY et al., Respondents.

Marcel E. Cerf, Robinson & Leland and Courtney L. Moore for Appellant.

Sullivan, Roche, Johnson & Farraher and Frank M. Hultman for Respondents.

NOURSE, P. J.—Plaintiff sued for specific performance of an oral contract to leave by will a one-half interest in a business partnership. The defendants had judgment and plaintiff's appeal rests on the ground that defendants are estopped to raise the defense of the statute of frauds.

Since no attack is directed to a claim that the evidence is insufficient to support any particular finding of fact a brief statement of facts resting on the findings made by the trial court will suffice. Mrs. Martha Wiley and her son James operated as equal partners a furniture business located in San Francisco. In 1914 plaintiff, who was an employee of the partnership, married Martha Wiley's daughter Zaida. Plaintiff, his wife and Martha Wiley lived together until 1938 when Zaida died. In 1922 these three moved to a pent house on the roof of the store of the partnership provided by Mrs. Wiley where "plaintiff and his said wife paid no rent and no charges for telephone, gas or electricity." In 1932 plaintiff learned of the insolvency of a furniture business in the city of Oakland and of the desire of the creditors to get someone to "take over" that business. He made some investigations by looking through the windows of the Oakland store, but made no inquiries of the owner of the business or of any of the creditors as to whether the business was to be closed out by the creditors, sold to an independent purchaser, or run by some individual on behalf of and under the direction of the creditors. While thinking of this proposition plaintiff, his wife, and Mrs. Wiley discussed the prospect and Mrs. Wiley told the plaintiff that "if he would reject the said offer of the

representative of T. W. Corder, Inc., and remain with the J. H. Wiley Company business and continue to live in a home in San Francisco with Martha Wiley and his wife, Zaida Bogan, she would by her last will and testament bequeath to plaintiff and his wife, Zaida Bogan, the ½ interest in the copartnership.'' (This finding is much too favorable to the appellant and it is not supported by the evidence. The appellant repeatedly testified, and was supported by other witnesses who heard the conversations, that Mrs. Wiley said on many occasions that the "children," (appellant and Zaida) already had a good business, that one-half of the partnership was going to them at her death, that she *always intended* to leave the "children" her share of the business, and that they should forget the Oakland offer because it would break up the pleasant family association. As a "contract" this is nothing more than an agreement to compensate by will for services to be rendered, and for companionship, which was the basis of the cause of action in *Long* v. *Rumsey*, 12 Cal.2d 334 [84 P.2d 146], and similar cases hereinafter cited. But it was an agreement which was not conditioned on the rejection of the Oakland offer.) Plaintiff's wife was at all times opposed to his leaving the Wiley concern as it would require them to move to Oakland and give up their residence with Mrs. Wiley and all its advantages, and for many years prior to the date in question Mrs. Wiley had informed her daughter and the plaintiff that she regretted that her deceased husband had made no provision for Zaida and that she, Mrs. Wiley, would make it right by her in her will. The trial court found that at the time plaintiff rejected the "offer" to go to the Oakland concern he had not made sufficient investigation "to determine whether or not it was to his interest to accept the proposition"; and that in giving it up he "did not so alter his position as to incur any unjust, unconscientious injury or loss"; also that it was not true that, after Zaida's death, Martha Wiley and plaintiff agreed that, if he would remain in the employ of the Wiley concern, Mrs. Wiley "would by her last will and testament leave and bequeath to plaintiff a ½ interest or any interest in said copartnership." (This finding is important in relation to the testimony of plaintiff throughout the trial. The defendants had raised the defense that decedent's promise to leave the estate to her daughter and son-in-law was unenforceable because of the death of the daughter. To meet this plaintiff testified that after the daughter's death

decedent made a new contract promising to leave the whole estate to him alone if he would continue to work for her. The trial court's finding that this testimony was untrue, taken with its inherent improbability, casts a serious shadow over the entire testimony of the witness.)

After the death of Zaida in 1938 plaintiff continued to live with Mrs. Wiley until 1940 when he remarried over her objections. Her bitterness over this event continued until her death in 1942. Then plaintiff discovered that she had transferred her interest in the partnership to her granddaughter. The trial court found that the purported contract was unenforceable because of the statute of frauds, Code of Civil Procedure, section 1973, subdivision 6, and Civil Code, section 1624, subdivision 6. It is conceded that this finding is conclusive unless this court should determine as a matter of law that defendants are estopped from raising the plea of these statutes.

There is no merit in the appeal and hence the judgment must be affirmed upon the rules of law so well settled that a brief reference to the decisions will suffice.

■ The code sections declare that an oral contract to devise or bequeath property by will is invalid. Since their enactment our decisions have consistently held that such contracts are unenforceable. (*Hagan* v. *McNary*, 170 Cal. 141, 144 [148 P. 937, L.R.A. 1915E 562]; *Trout* v. *Ogilvie*, 41 Cal. App. 167, 173 [182 P. 333]; *De Mattos* v. *McGovern*, 25 Cal. App.2d 429, 432 [77 P.2d 522]; *Zaring* v. *Brown*, 41 Cal.App. 2d 227, 231 [106 P.2d 224]; *Smith* v. *Bliss*, 44 Cal.App.2d 171, 175 [112 P.2d 30]; *Long* v. *Rumsey*, 12 Cal.2d 334, 341 [84 P.2d 146]; *Rotea* v. *Izuel*, 14 Cal.2d 605, 607 [95 P.2d 927, 125 A.L.R. 1424].)

■ There is complete harmony in the decisions that where the oral contract to leave property by will is in compensation for services rendered or to be rendered, and hence unenforceable under the code sections, the remedy, if any, is in quantum meruit for the value of the services rendered. (*Morrison* v. *Land*, 169 Cal. 580, 586, 590 [147 P. 259]; *Zellner* v. *Wassman*, 184 Cal. 80, 84 [193 P. 84]; *Long* v. *Rumsey*, 12 Cal.2d 334, 342 [84 P.2d 146]; *De Mattos* v. *McGovern*, 25 Cal.App. 2d 429, 432 [77 P.2d 522].)

Cases are cited holding that, notwithstanding the invalidity of the oral contract, equity will grant relief by invoking an estoppel against those taking under the will. *Notten* v. *Men-*

*sing*, 3 Cal.2d 469, 474 [45 P.2d 198] is relied on. Reference to that case calls for a brief history of the litigation. The cause first came to this court on appeal from a judgment sustaining a demurrer to the complaint. The action was one to enforce a constructive trust upon property devised to the heirs of Mrs. Notten. It was based upon the theory that Mr. and Mrs. Notten had by agreement executed joint wills dividing their property between their respective relatives and that the execution of the wills was part execution of the oral contract. The complaint alleged that Mr. Notten died first, that his widow took under his will, and that she thereafter repudiated the agreement and left all the joint property to her own relatives. This court affirmed the judgment, but, on the theory that the widow's repudiation of the agreement was a constructive fraud upon those who would have taken under the joint wills, the Supreme Court reversed the judgment holding that the defendants were estopped to plead the statute of frauds. The cause went back for trial on the merits and there it appeared that the widow had received approximately $600 through the husband's will whereas her estate was approximately $800,000. On this showing the trial court found that there was no fraud and no basis for an estoppel. An appeal from that judgment also came to this court and we affirmed it. *Notten* v. *Mensing*, 20 Cal.App.2d 694 [67 P.2d 734]. A petition for a transfer to the Supreme Court was denied.

The rule of the Supreme Court's decision in the Notten case is that "under the proper circumstances" a party may be estopped to plead the statute of frauds. But it is fully emphasized in that decision that "in order to raise the estoppel, fraud in some form is essential." On the first appeal based on the demurrer to the complaint the Supreme Court was impressed with the pleading that the widow had accepted and "retained all the benefits" of the mutual agreement as a devisee under her husband's will. On the pleading alone it was held to be a case where the plea of estoppel *might* lie. But when the facts were disclosed at the trial and the evidence of "benefits" was produced the plaintiffs' plea of estoppel vanished.

Here the evidence is that Martha Wiley's interest in the partnership was worth $112,000. This is the consideration for which appellant insists he abandoned his investigation of the opportunity to engage in another business. No attempt

was made to place a value on this mythical opportunity; nothing was shown except that the Oakland concern had failed and that appellant was informed that he might be considered for employment in some undisclosed capacity. But if appellant lost any material advantage the record does not disclose it. He and Zaida continued to work for the Wiley concern and wages were paid in full to them; they were given their rooms free from rent, gas, electricity and telephone charges and a mother-in-law who did their cooking and nursing. These advantages would have been sacrificed if appellant had accepted the Oakland employment and from appellant's testimony it appears that that was the one big consideration which induced appellant and his wife to abandon the suggestion of the Oakland concern and to remain under the protection and support of Mrs. Wiley. The evidence is that appellant's wife urged him to abandon the plan—not because of Mrs. Wiley's promise to provide for them by will because that promise had been made on numerous occasions prior thereto, and without any "consideration"—but because she did not wish them to give up the advantages of the mother's present care and maintenance. On the other hand the appellant failed to show that he gave up any advantage in rejecting the "offer," and the trial court found that he "had not investigated far enough into the business to determine whether or not it was to his interest to accept the proposition."

These repetitious statements of the facts and the findings are made to demonstrate the complete failure of appellant to prove the essential elements of the plea of estoppel. It is said in 10 California Jurisprudence pages 626-7 that: "The whole office of an equitable estoppel is to protect one from a loss which, but for the estoppel, he could not escape. The vital principle of equitable estoppel, it has been said, is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted." The trial court found that: "In rejecting said offer of the said representative of Corder, Inc., and in continuing with the said copartnership of 'J. H. Wiley, The Furniture Man,' plaintiff did not so alter his position as to incur any unjust, unconscientious injury or loss." And also that: "The said offer was too indefinite for this Court to find whether the acceptance of the offer would have been beneficial or detrimental to plaintiff, even had said representative of Corder, Inc., been authorized to dispose of said business.

There is no evidence that plaintiff would have or would not have accepted any such offer and left the employ of 'J. H. Wiley, the Furniture Man,' if Martha Wiley had not promised to bequeath her interest in said business to her daughter, Zaida Bogan, and plaintiff. This Court therefore finds that plaintiff was not damaged by his rejection of said offer and his remaining in the employ of 'J. H. Wiley, the Furniture Man,' until after the death of Martha Wiley.'' Having failed to prove that he had suffered any loss through any representations made by the decedent, appellant's plea of estoppel against these respondents must fall.

It is manifest that appellant could not by any action at law or in equity inject himself into the partnership of J. H. Wiley without the consent of the surviving partner. Under section 571 of the Probate Code the partnership ceased upon the death of Mrs. Wiley and the surviving partner would then settle the partnership and pay what was due to the estate of the decedent. If appellant had any cause of action it was one against the estate for damages for breach of the contract, or in quantum meruit for the value of the services rendered under it. But he did not sue the estate and the evidence showed first, that there was no consideration for the contract and second, that he was paid in full, and overflowing, for the services rendered. The fact that he could not have recovered in an action at law, or that he lost the right by failure to pursue it does not justify the appeal to a court of equity. (*De Mattos* v. *McGovern, supra.*)

*Morrison* v. *Land,* 169 Cal. 580, 586, 590 [147 P. 259], states the rules which are conclusive here. (P. 586.) ''Passing without discussion other requisites, it is elementary that where, as here, the primary right of a party is *legal* in its nature, as distinguished from *equitable,* and one for which the law affords some remedy, as here damages by way of compensation for breach of contract, a proper exercise of the equitable jurisdiction will not give equitable relief in any case where the legal remedy is full and adequate and does complete justice. No principle of equitable jurisprudence is more firmly established than this. (1 Pomeroy's Equity Jurisprudence, sec. 221.) For instance, the exclusive jurisdiction of equity to grant relief by way of specific performance of a contract will be exercised only in those cases where the legal remedy of compensatory damages is insufficient under the circumstances of the case, in the opinion of the court, to do com-

plete justice between the parties." And (p. 590) "An ordinary action at law for breach of the contract would bring him the very thing to which he is entitled under the allegations of his complaint—afford him full and adequate relief. In such an action, the measure of damages would have been the value of the property agreed to be bequeathed, for that was the amount in which he was damaged by the breach." (See *Flood* v. *Templeton,* 148 Cal. 374, 378 [83 P. 148]; *Zellner* v. *Wassman,* 184 Cal. 80, 84, 87 [193 P. 84]; *Ruble* v. *Richardson,* 188 Cal. 150, 154 [204 P. 572]; *Long* v. *Rumsey,* 12 Cal.2d 334, 342 [84 P.2d 146].)

The judgment is affirmed.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied February 13, 1946, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1946.