[Civ. No. 13416. First Dist., Div. Two. Feb. 23, 1949.]

LEWIS E. BOGAN, as Administrator, etc., Plaintiff and Appellant, v. JAMES FRANCIS WILEY, Defendant and Appellant.

Courtney L. Moore and Marcel E. Cerf, Robinson & Leland for Plaintiff and Appellant.

Sullivan, Roche, Johnson & Farraher and Frank M. Hultman for Defendant and Appellant.

DOOLING, J.—Plaintiff, as administrator of the estate of Zaida Bogan, deceased, had judgment for $24,000 against defendant following a jury's verdict. The defendant had made a motion for nonsuit and after the return of the verdict against him made a motion for judgment notwithstanding the verdict which was denied. From the order denying the motion for judgment notwithstanding the verdict defendant has appealed, that order being one expressly made appealable by section 963, Code of Civil Procedure. After the entry of judgment against him defendant made a motion for new trial which was granted. Plaintiff has appealed from the order granting defendant's motion for new trial and defendant pursuant to rule 3 (b), Rules on Appeal has cross-appealed from the judgment. We thus have three appeals presented.

We have concluded that the motion for judgment notwithstanding the verdict should have been granted and this being so it does not become necessary to pass upon the two later appeals.

Plaintiff's action filed May 5, 1944, was based on an alleged loan of $12,000 made by plaintiff's wife Zaida in 1932 to the firm of J. H. Wiley, The Furniture Man, a partnership then consisting of plaintiff's mother-in-law, Mrs. Martha Wiley, and her son James F. Wiley, defendant herein. Plaintiff alleged that at the time of his wife's death her estate exclusive of this loan was not of sufficient value to require probate, and that defendant concealed from plaintiff, the fact of the loan which was discovered by plaintiff's attorneys after October, 1942. Plaintiff asked double recovery under section 612 of the Probate Code dealing with embezzlement or concealment of property of a decedent. Plaintiff had married Zaida Wiley in 1914 and from about two and one-half years after their marriage, plaintiff and his wife worked together in the Wiley furniture store till Zaida's death in 1938. Zaida collected their salaries, and gave her husband whatever spending money he needed. She took care of all family financial matters.

On August 3, 1932, Zaida withdrew $12,000 from a joint account of her mother and herself and deposited it in her individual account. On August 9, 1932, she withdrew $12,000 and $3,000 from her individual account and on the same day $15,000 was deposited in the partnership account and used by the partnership to repay a loan to Bank of California. Defendant Wiley testified that he could not remember whether the money used to repay the aforesaid loan had come from Zaida. In 1932 the firm paid Zaida $370.40 interest and thereafter $720 per year through 1937 (which plaintiff notes is 6 per cent on $12,000) and $600 for 1938. She died in November of that year. The bookkeeper made the interest entries. Zaida's and plaintiff's joint returns and the partnership's income tax returns both showed the payment and receipt of interest as set forth above. Defendant testified that the interest was really bonuses paid his sister, and so disguised in order that other salesmen would not know, although he admitted the salesmen had no access to the books.

On November 23, 1938, the day of Zaida's death, defendant and his mother borrowed $12,000 from the Bank of America, depositing it in the firm account. On the same day $12,000 was also withdrawn from the firm account. Defend-

ant testified that on that day he had the bookkeeper draw a check to the order of his wife, Maud Wiley, for $12,000 in payment of a $12,000 loan made to the firm by her father Frank Johnson, in 1926. The check register showed that an erasure had been made at this entry and when restored the entry read "Zaida and Lewis E. Bogan" in the bookkeeper's handwriting. Defendant testified that although he did not customarily go over the check register, in checking through it he had noted the mistake made by the bookkeeper in entering this check and had corrected it himself. The reason he paid off the loan to his wife on the day of his sister's death was because he thought some questions might be raised in settling his sister's estate inasmuch as the books showed interest payments to his sister and none to his wife, "and I thought if it was out of the book, it would be just as well."

Defendant points out that the "Notes Payable Others" ledger at page 201 (the posting reference in the check register at the erasure) contains the names of Frank Johnson and Maud Wiley, while the names of Zaida and Lewis Bogan do not appear thereon. The accountant's entry on November 23, 1938, shows the loan of $12,000 repaid to Maud Wiley.

Plaintiff on February 3, 1943, had filed a complaint against Martha Wiley to enforce an alleged contract to make a will in his favor. In that case plaintiff testified that he did not probate Zaida's estate at the time of her death because he expected from his mother-in-law's assurances that he would receive a half interest in the firm's business when she died. This court held in *Bogan* v. *Wiley,* 72 Cal.App.2d 533 [164 P.2d 912], that plaintiff had no enforceable contract against Martha Wiley's estate on this alleged contract to make a will.

The case was tried on the theory that the above recited facts entitled plaintiff to a recovery under section 612, Probate Code, reading:

"If any person embezzles, conceals, smuggles or fraudulently disposes of any property of a decedent, he is chargeable therewith and liable to an action by the executor or administrator of the estate for double the value of the property, to be recovered for the benefit of the estate."

The case was submitted to the jury on the theory that defendant had embezzled property belonging to the deceased wife's estate. We cannot agree with this theory. Even if the word "embezzles" as used in this section is not used in

the technical sense of the criminal law, but means "to fraudulently appropriate to one's own use, or conceal the effects of the estate which such person has in his possession," as suggested in the early case of *Jahns* v. *Nolting,* 29 Cal. 507, 511, the question still presents itself: What property of the estate of Zaida Bogan which defendant had in his possession did he "fraudulently appropriate to his own use or conceal?"

Plaintiff suggests that it may have been either the check drawn to Zaida and Lewis Bogan or the debt owed to Zaida Bogan by the partnership. We shall examine each of these suggestions in turn.

■ The check never became the property of Zaida Bogan or of her estate. No rule is better settled than the one that the payee gets no property in a negotiable instrument until its delivery. (Civ. Code, § 3097; 19 Cal.Jur. 826.) It is perfectly clear that there was never under plaintiff's own theory any intention to vest title to this check in Zaida Bogan or her estate. It is plaintiff's theory that defendant as managing partner caused the check to be drawn to Zaida and Lewis Bogan for his own purposes with intent to use it for his own ends. Even if the partnership be considered as a separate entity and may be conceived of as having delivered the check to defendant the intention with which it was delivered was the intention in defendant's mind for he was the one who caused it to be executed; and he had no intention (on plaintiff's own theory) of transferring or delivering the check to the payees or either of them. No theory of trust or analogy to the doctrine of executor *de son tort* can avail plaintiff under the circumstances. ■ Since title to the check was neither vested in, nor held by defendant for, Zaida Bogan or her estate it never became her property or that of her estate. If it was not property of Zaida Bogan or her estate it could not be embezzled, concealed, smuggled or fraudulently disposed of within the meaning of Probate Code, section 612 since by its terms that section applies only to "any property of a decedent."

Turning to the debt or chose in action, the manipulations of defendant did not affect the partnership's obligation to Zaida Bogan. If the partnership owed her or her estate $12,000 before the check was drawn and its proceeds appropriated by defendant, it continued to owe her $12,000 afterwards. The debt had not been paid and it could not be cancelled by any such legerdemain. Under no justifiable defini-

tion of the word can the defendant be said to have embezzled the debt or chose in action.

Plaintiff argues that in any event the partnership obligation to Zaida Bogan was property of her estate which was "concealed" by defendant within the meaning of section 612, Probate Code. This can only be true if any debtor of a decedent who attempts to conceal the fact of his owing the debt violates the provisions of Probate Code, section 612, and thereby renders himself liable to the estate in double the amount of debt. Probate Code, section 612, cannot reasonably bear this construction.

■ The word "property" in its most general sense is broad enough to cover everything, tangible and intangible, which may be the subject of ownership (21 Cal.Jur. 639, 640) but "The meaning of the term may be restricted by the context of a particular statute or writing in which it is used" (21 Cal.Jur. 640) and it has been construed by our courts in certain contexts not to include choses in action. (*People* v. *Hibernia Savings & Loan Soc.*, 51 Cal. 243 [21 Am.Rep. 704]; *Franklin* v. *Franklin*, 67 Cal.App.2d 717 [155 P.2d 637].) In the latter case the court says in 67 Cal.App.2d at page 725, 155 P.2d at page 641:

"But the meaning to be given to the word depends upon the sense in which it is used, as gathered from the context and the nature of the things which it was intended to refer to and include."

■ A consideration of the language of Probate Code, section 612, indicates that the "property of a decedent" therein referred to does not include naked choses in action but is limited in its sense to tangible property. No person can embezzle, smuggle or fraudulently dispose of another's right of action to recover a debt, and yet all those verbs are used in section 612 with relation to the property there spoken of. Furthermore, we may properly examine other sections of the Probate Code to determine the sense in which the Legislature intended to use "property" in section 612. (*McPike* v. *Superior Court*, 220 Cal. 254, 258, 259 [30 P.2d 17].) The very next section makes a distinction between the word property and choses in action. In Probate Code, section 613, it is provided:

"Upon complaint made under oath by an executor, administrator, or other person interested in the estate of a decedent, that any person is suspected of having embezzled, concealed,

smuggled or fraudulently disposed of any property of the decedent, or has in his possession or has knowledge of any deed, conveyance, bond, contract or other writing, which contains evidence of or tends to disclose the right, title, interest or claim of the decedent to any real or personal property, or any *claim or demand,* or any lost will, the court or judge may cite the suspected person to appear before the court, and may examine him on oath upon the matter of such complaint.''

We have italicized the words ''claim or demand'' which are there treated as distinct from and additional to the words ''real or personal property,'' which they immediately follow.

See also Probate Code, section 571, which authorizes the executor or administrator to ''take into his possession all the estate of the decedent, real and personal, and collect all debts . . .''; Probate Code, section 573, which authorizes executors and administrators to maintain ''actions for the recovery of any property, real or personal . . . and all actions founded upon contracts . . .''; and Probate Code, section 574, where the word ''property'' can only be used in the sense of tangible property capable of being ''wasted, destroyed, taken, or carried away or converted. . . .''

We conclude that a naked chose in action is not included within the meaning of ''any property of a decedent'' as those words are used in Probate Code, section 612. This being so plaintiff did not make out a case falling under that section and the motion for judgment notwithstanding the verdict should have been granted.

The order denying the motion for judgment notwithstanding the verdict is reversed with directions to the trial court to grant the motion and enter judgment for defendant. The appeals from the judgment and the order granting a new trial are dismissed, defendant Wiley to recover costs on all appeals.

Nourse, P. J., and Goodell, J., concurred.

Plaintiff and appellant's petition for a hearing by the Supreme Court was denied April 21, 1949.