[Civ. No. 18620. First Dist., Div. One. June 28, 1960.]

MARIO BORGONOVO et al., Appellants, v. F. W. HENDER-SON et al., Defendants; PACIFIC COMMERCIAL BUILDERS (a Corporation) et al., Respondents.

Jay Jackson for Appellants.

Costello & Johnson, Kenneth A. Johnson, Herbert Chamberlain, Rea, Frasse, Anastasi, Clark & Chapman, E. H. Chapman, W. A. Lahanier, Bressani & Hansen, G. B. Hansen, Koford, McLeod & Koford and George M. McLeod for Respondents.

TOBRINER, J.—This case arises out of the debacle left by an operator, who constructed and sold motels, and whose defaults have caused loss to those with whom he dealt. We fix only the division and participation of the losses among the innocents, a determination which must rest upon an application of the legal rules to the facts. Appellants appeal from a judgment which declares that respondent Pacific Commercial Builders is a holder in due course of their promissory note and that appellants have no right of setoff or recoupment against the note. We have concluded, however, that, since appellants deposited the note in escrow upon instructions not to negotiate it until the payee complied with a condition precedent, and since the condition was not met, the payee's assignment of the note to respondent Pacific Commercial Builders conveyed no interest, and it did not become a holder in due course because of failure of delivery of the note. As to the claims of two

suppliers of furniture, furnishings and equipment to the motel, we do not believe the evidence substantiates the judgment against appellants.

The sequence of events begins with a contract of appellants and one of the two sham corporations which Henderson made use of in these transactions, Western Host, Incorporated, executed in November, 1954. Henderson promised appellants a long term lease upon certain real property in Palo Alto, California, and the erection of a motel upon such property, complete with furniture, furnishings and equipment. Appellants were to pay for this property the total amount of $165,100: $45,000 in cash, a construction loan of $65,000 and a promissory note of appellants to Western Host, Incorporated, of $55,100. The latter gives rise to the chief subject matter of this action. The property was to be free of all liens other than a first deed of trust for the construction loan of $65,000 and a second deed of trust to secure the payment of appellants' $55,100 promissory note.

Henderson's representations were false; he neither paid, nor intended to pay, the suppliers of the furniture, furnishings and equipment. He made such representations to induce appellants to enter into the agreement. In these transactions Henderson fraudulently made use of the above sham corporation, Western Host, Incorporated, and a second such corporation, Great Western Hotels, Inc.

Appellants met the above described cash payment by conveying to Henderson a piece of real property, the Biber Building, in San Carlos, California, which they owned. The net value of the Biber Building exceeded the required down payment by $4,022.14. Henderson agreed to refund to appellants the difference.

On July 20, 1955, Henderson entered into an agreement with Pacific Commercial Builders, hereafter called "Builders," to construct the motel. Prior to that time Henderson had requested Builders to build the motel for the sum of $15,000 plus actual costs of construction. Henderson represented to Builders (1) that a construction loan would be secured on the realty in the sum of $65,000, (2) that Henderson would put up an additional $18,000, (3) that appellants had agreed to execute the promissory note of $55,100, secured by a deed of trust on the leasehold interest, and (4) that Henderson would transfer the note and deed of trust to Builders to finance the construction.

Henderson, however, did not tell appellants that he agreed

to transfer the note and deed of trust to Builders nor did appellants themselves make any representation to Builders as to the note or deed of trust. But Builders, relying upon Henderson's representations, entered into a contract with Western Host, Incorporated, agreeing to construct the motel for $15,000 plus actual costs incurred. The agreement provided that the $55,100 note and the deed of trust were to be transferred to Builders.

Appellants executed their promissory note dated July 6, 1955, in the sum of $55,100 payable to Western Host, Incorporated, one of the two sham Henderson corporations. The note was secured by a deed of trust on the leasehold. Appellants delivered the note and deed of trust to respondent California Pacific Title Insurance Company as escrow holder. Appellants' instructions read, "Record above deed of trust & hold said deed of trust & note at your office until such time as you hold for Mario Francis Borgonovo et ux the sum of $4022.14—to be received by you from Western Host Incorporated—to be released upon our demand. At that time you are authorized to release the deed of trust & note to Western Host Incorporated." Builders likewise placed in the escrow their agreement with Western Host, Incorporated, "to become effective when the construction loan was obtained and the conditions of said loan were complied with."

The title company did not receive the $4,022.14 described in the instructions in the escrow. Nevertheless while these documents were in the title company's possession, Western Host, Incorporated, endorsed the back of the promissory note to Builders, executing an assignment to Builders of the note and deed of trust. Western Host, Incorporated, placed the assignment in the escrow. The note and deed of trust remained with the title company until offered in evidence at the trial. On August 18, 1955, the parties obtained the construction loan; the title insurance company recorded the second deed of trust and the assignment of the deed of trust and promissory note.

In accordance with its agreement with Western Host, Incorporated, Builders constructed the motel. Builders expended more than the amount of the construction loan and the payments by Western Host, Incorporated, and Henderson. Builders did not receive the $15,000 to which it was entitled under the contract or the amounts expended by it in excess of the construction loan and of the monies advanced by Western Host, Incorporated, and Henderson.

On January 16, 1956, Builders assigned, for a valuable consideration, its interest in the promissory note and deed of trust to respondent Walker. Upon the completion of the motel in June, 1956, appellants commenced operations. Shortly thereafter various suppliers, including respondents Carabao Special Products Company and Hayes Manufacturing Company, demanded payment from appellants for the various furniture, furnishings and equipment that these suppliers had sold to Great Western Hotels, Inc., and for which they had not been paid.

The judgment from which appellants appeal provided that Henderson and Western Host, Incorporated, are indebted to appellants for $59,474.91, $11,077.19 of such monies "by reason of the failure of . . . [Henderson] to pay the suppliers of the furniture, furnishings and equipment. . . ." The judgment also provided that appellants were liable to Hayes Manufacturing Company and Carabao Special Products Company for $725.12 and $1,459.51 respectively, plus interest and costs of suit. It further stated that "By reason of . . . California Pacific Title Insurance Company having recorded the assignment of the $55,100.00 promissory note and deed of trust securing said note to defendant Pacific Commercial Builders, said promissory note was constructively delivered to . . . Pacific Commercial Builders [who] . . . thereby became a holder in due course of said promissory note. . . . Theodore S. Walker, as the assignee of . . . Pacific Commercial Builders, is entitled to all of the rights of . . . Pacific Commercial Builders. . . ." The judgment stated that appellants have no right of setoff or recoupment against the note in the hands of Walker. Appellants' amended complaint had prayed that in the event the court found the $55,100 note and deed of trust had been transferred by this respondent in violation of the escrow instruction appellants recover damages against California Pacific Title Insurance Company. As to this issue the court granted the title company a nonsuit.

We shall discuss three issues which arise from this background situation: (1) Did Western Host's assignment of the note and deed of trust convey any interest to Builders, and did Builders thus become a holder in due course; (2) Is California Pacific Title Insurance Company liable for violation of instructions; (3) Does the evidence sustain the judgment in favor of Carabao Special Products Company and Hayes Manufacturing Company.

We commence with the first and underlying question of

whether Western Host's assignment of the note and deed of trust conveyed any interest to Builders, and whether Builders became a holder in due course. No theoretical reason prevents the imposition of a condition precedent upon the negotiability of a note. We cannot decree that a party has no *right* to provide that his obligations be contingent upon the prior payment of an indebtedness to him. The crux of the case lies, thus, in an analysis of the instructions to the title company to determine if appellants did actually condition delivery of the note to the prior payment of the $4,022.14.

Appellants correctly contend that the portion of the judgment decreeing Builders a holder in due course of the $55,100 note must fail for want of delivery of the instrument. As Civil Code, section 3097, provides, "Every contract on a negotiable instrument is incomplete and revocable *until delivery* of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making . . ." the instrument. (Emphasis added.) Appellants instructed the title company to hold the deed of trust and note at its office *until* it received the $4,022.14 from Western Host, Incorporated, to be released "upon our demand." *At that time* appellants authorized the title company to release the deed and note to Western Host, Incorporated. Appellants thus clearly specified that compliance with the instructions be a condition precedent to delivery. Respondents cannot defeat the meaning of the instructions by recourse to rules of interpretation against conditions precedent.

No delivery of the note, within the meaning of section 3097 of the Civil Code, took place. As the court says in *Sousa* v. *First California Co.* (1950), 101 Cal.App.2d 533, 539 [225 P. 2d 955], "Only after strict compliance with the condition imposed . . . does the escrow holder begin to hold for the party thereby entitled. . . ." *Bogan* v. *Wiley* (1949), 90 Cal. App.2d 288, 292 [202 P.2d 824], holds, "No rule is better settled than the one that the payee gets no property in a negotiable instrument until its delivery." And *Todd* v. *Vestermark* (1956), 145 Cal.App.2d 374, 377 [302 P.2d 347], states: ". . . a delivery or recordation by or on behalf of the escrow holder prior to full performance of the terms of the escrow is a nullity. No title passes."

An escrow holder prior to the performance of the

conditions of the escrow serves as the agent of both parties thereto; only upon the fulfillment of the conditions attending the escrow does this "dual agency" change "to an agency not for both, but for each of the parties . . . in respect to those things placed in escrow to which each has thus become completely entitled." (*Shreeves* v. *Pearson* (1924), 194 Cal. 699, 707 [230 P. 448]; see also *Greenzweight* v. *Title Guar. & Trust Co.* (1934), 1 Cal.2d 577, 582 [36 P.2d 186]; *Roberts* v. *Carter & Potruch* (1956), 140 Cal.App.2d 370, 372-373 [295 P.2d 515].) Until the escrow holder in the instant case received the $4,022.14, it did not occupy the status of an agent for the payee so that it could effectuate a constructive delivery.

We cite two decisions which, we believe, directly sustain this position. Thus in *Gray* v. *Baron* (1910), 13 Ariz. 70 [108 P. 229], the defendant executed a promissory note which he delivered into escrow; the plaintiff delivered certain stocks into escrow; the escrow instructions provided that ". . . 'if at any time on or before the expiration of one year, Gray shall pay you for me the amount of said note, you will deliver said stock to Gray, or if Gray pays for any portion of said stock at the rate of 90 cents per share, then you will deliver that portion to him and credit the same on said note as a partial payment thereon.' " (P. 72.) Gray made no payments on the note within the one year period and at the time of the trial the escrow holder still held the note and the stock. Although defendant urged a motion to dismiss "on the ground that no delivery of the note in question to the plaintiff had been proved, . . ." (p. 72) the trial court denied the motion and gave judgment for plaintiff on the promissory note. In reversing the trial court and dismissing the plaintiff's complaint, the Supreme Court of the Territory of Arizona said, "Under the terms of the escrow agreement and the facts . . . there was no . . . delivery of the note in question to the plaintiff as constituted the plaintiff the owner and holder thereof. . . ." (P. 74.)

*Jacobitz* v. *Thomsen* (1925), 238 Ill.App. 36, even more closely resembles the instant dispute. In that case plaintiff as assignee of the payee of a note, one Thullen, recovered a judgment upon the note in the trial court. In reversing and holding that defendants' motion for a directed verdict should have been granted, the appellate court stated: ". . . [defendants] filed pleas alleging . . . that the note was never, in fact, delivered to the payee by defendants, but was placed in escrow with a bank, to be held until Thullen completed certain build-

ings which he was erecting for the defendants and to be then delivered upon the joint order of Thullen and the defendant Thomsen; that some of the buildings were never completed, and that Thomsen gave no order for the delivery of the note, but that Thullen obtained possession of it by a writ of replevin, after which he pretended to assign it to the plaintiff. . . . Thullen testified that the note was placed in escrow to be delivered upon the completion of the buildings; that the buildings were thereafter completed; that Thomsen found fault with one of them . . . which the witness remedied. . . . The cashier of the bank . . . testified that the note was left with the bank 'in escrow, to be delivered when the buildings were completed and accepted by the Dolton estate, on instructions from Thomsen,' and that Thomsen never directed him or the bank to turn the note over to Thullen, but that the bank delivered it to the sheriff on the replevin writ." (Pp. 37-38.)

Upon these facts the court held, "If the escrow agreement was to the effect stated by . . . the cashier of the bank, it is clear the note was never delivered. If the escrow agreement was as stated by Thullen, still, as it appears that there was a dispute as to whether the buildings were ever completed, there could be no delivery until the dispute was settled, in the replevin suit or elsewhere. *In either case, the note never became an obligation binding, as such, upon the defendants*." (P. 38; emphasis added.)

Since the title company did not hold the note for Western Host's benefit, that company continued to hold the note as appellants' agent. (*Kelly* v. *Steinberg* (1957), 148 Cal.App. 2d 211, 217-218 [306 P.2d 955]; *Kellogg* v. *Curry* (1951), 101 Cal.App.2d 856, 859 [226 P.2d 381].) Builders, consequently, could not be a holder in due course. Since a " '[h]older' means the payee *or indorsee* of a bill or note, who is *in possession* of it, or the bearer thereof" (Civ. Code, § 3266; emphasis added), Builders, by definition, could not be a "holder in due course"; indeed, it was never even a "holder." At all times here involved the title company held the note as appellants' agent; the endorsement and assignment of the note and deed of trust by Western Host to Builders constituted the assignment of only Western Host's contingent interest. (*Estate of Haney* (1959), 174 Cal.App.2d 1, 7 [344 P.2d 16].)

Respondents Builders and Walker would avoid the impact of the failure of delivery by arguing that the escrow did not provide that Western Host's payment of $4,022.14 operate as a condition precedent. These respondents in substance contend

(1) that the instruction *to record* the deed of trust symbolized an intent of the appellants *to deliver* the note and deed of trust; otherwise, they claim, the recordation would have constituted a useless act; (2) that the trial court's finding that such delivery occurred binds us as a finding of fact; (3) that the title company held title to the note for Western Host and the title company's receipt constituted delivery; and (4) that the interpretation that the payment of the $4,022.14 is a condition precedent necessarily would void the whole transaction or work an unjust enrichment to appellants.

To accept respondents' first argument would, in effect, convert the note into an incident of the security. Yet these respondents recognize the rule that a security interest serves as an incident to the debt (Civ. Code, § 2909), and on oral argument before this court admitted "if we didn't have a promissory note, and if it . . . wasn't an obligation . . . [t]here would be nothing for that security to secure; so it couldn't exist." Moreover, as the decisions have held, the mere recordation of a deed of trust by the escrow holder, in accordance with the trustor's instructions, does not establish delivery. Thus in *Jeannerette* v. *Taylor* (1934), 2 Cal.App.2d 568 [38 P.2d 831] (petition for hearing in Supreme Court denied), the "title company, following plaintiff's instructions, recorded a deed to the property which she had signed and acknowledged, the defendant being named therein as the grantee. Following this the title company . . . mailed the recorded deed to defendant." The court then stated: "The evidence shows that this was done without express authority. . . . No one who had possession of the deed was authorized by plaintiff to deliver the same to the defendant. The delivery to the title company was for the limited purpose of recordation. No authority was thereby conferred to make delivery, and its act in mailing the instrument to the defendant did not have the effect of passing title . . ." (Pp. 569-570.)

Furthermore, the recordation of the deed of trust, pending the completion of the escrow, did not constitute a useless act. The recordation imparted constructive notice to all persons and assured the beneficiary of the trust deed that while the trust deed reposed in escrow his security interest could not be defeated, wholly or partially, by the trustor's conveyance or creation of another security interest. "Where the grantor has deposited his deed as an escrow but thereafter, pending performance of the condition, he conveys to a third

party purchaser with notice, it has been held that the doctrine of 'relation back' will be applied to protect the title of the grantee under the deed previously deposited as an escrow. However, it appears that the doctrine will not be so applied where the third party to whom the grantor conveys is a bona fide purchaser for value without notice of the escrow.'' (*Escrows—Their Use and Value*, 1949 Ill. Law Forum, pp. 398, 414-415.)

Respondents' second contention that the delivery in question is a matter of fact for the trial court's determination also fails. *Osborn* v. *Osborn* (1954), 42 Cal.2d 358, 364 [267 P.2d 333], states the rule: ''*When, as here,* however, *the grantor's 'only instructions are in writing,* the effect of the transaction depends upon the true construction of the writing. It is in other words a pure question of law* whether there was an absolute delivery or not.' (*Moore* v. *Trott,* 156 Cal. 353, 357 [104 P. 578, 134 Am.St.Rep. 131]. . . .)'' (Emphasis partially added.) Since the interpretation of the escrow instructions, as any other written document, ''depends solely upon the language of the instrument itself the trial court's construction is not binding and a reviewing court will determine its meaning as a matter of law.'' (*Stevenson* v. *County of San Diego* (1945), 26 Cal.2d 842, 844 [161 P.2d 553].)

Respondents claim as a third position that, upon the title company's receipt of the note, it held title for the payee, Western Host, and that the title company's receipt constituted delivery. Respondents cite in support of this contention the cases of *Stewart* v. *Santa Rosa Mining Co.* (1944), 62 Cal.App. 2d 201 [144 P.2d 31] and *Miller* v. *Ambassador Park Syndicate* (1932), 121 Cal.App. 92 [9 P.2d 267]. In both of these cases, however, the escrow conditions *had been met* and the escrow holder therefore held the notes for the payee. Thus the court states in *Miller,* ''considering the passing of the events upon the happening of which the payee of the note became entitled to its possession, [it] constituted an effective legal delivery of the note to its payee.'' (P. 95.) In *Stewart,* the court states, ''All of the required papers had been placed in escrow and in accordance with the terms of the agreement the note here sued upon should have been delivered to the respondent by the escrow holder.'' (P. 205.) Since Builders did not become a holder in due course, the conclusive presumption of delivery avails respondents nothing. (Civ. Code, § 3097.) The cited case of *Baker* v. *Butcher* (1930), 106 Cal.App. 358, 367 [289 P. 236], does not apply; respondent Walker's admission

that his rights depend upon the status of Builders as a holder in due course proves fatal.

Respondents fourthly and finally contend that the conception of the payment of $4,022.14 as a condition precedent to delivery necessarily must void the entire transaction or work an unjust enrichment to appellants. In essence this contention suggests that appellants must rescind the contract in order that no unjust enrichment accrue to them; that, having elected to accept certain contractual benefits, they must ignore Henderson's breach of his duties. Yet respondents seek to collect upon a note under which appellants are not obligated for want of delivery; respondents' rights properly rest only upon the underlying contract or in quasi-contract. Thus, as is stated in *Jacobitz* v. *Thomsen, supra* (1925), 238 Ill.App. 36—"the note never became an obligation binding, as such, upon the defendants. . . . The reversal in this case, however, will be without prejudice . . . to any right Thullen may have to recover from defendants whatever sum, if any, may be due from them under the terms of the original contract . . . or the value of work, labor and materials furnished. . . ." (Pp. 38-39.) *Gray* v. *Baron, supra* (1910), 13 Ariz. 70, 74, likewise points out—"Under the terms of the escrow agreement and the facts . . . there was no such delivery of the note . . . and . . . the judgment entered by the court for the plaintiff requiring the payment of the note . . . [must be reversed as] outside of the issues set forth in the pleadings. . . . The theory of the trial court seems to have been that the plaintiff had established a cause of action based upon the breach of a contract to purchase the stock. The error of the trial court was . . . in attempting to enforce such a cause of action . . . in an action based simply upon the promissory note, and not one based upon the breach of the contract to purchase."

Moreover, it should be noted that "appellants [admittedly] have no wish to derive an unjust enrichment in this proceeding"; they only seek to offset against the note that which they have had to pay suppliers as a result of Henderson's breach of contract. Appellants' position rests upon the principle that "Any breach, total or partial, which causes a measurable injury, gives the injured party a right to *damages as compensation therefor*. . . ." (1 Witkin, Summary of California Law, [7th ed.] § 263, pp. 294-295) and "defenses acquired by the debtor against the assignor after notice of the assignment are [valid] . . . [if] based on a right of the defendant inherent in the contract by its terms. Thus, if payments under an

executory contract are assigned, the debtor may set up failure of the assignor to fulfill his part of the contract though such failure occurs after notice of the assignment, for the assignor cannot give another a larger right than he has himself. . . ." (Williston on Contracts (rev. ed.), Vol. 2, § 433, pp. 1253-1254; *Bliss* v. *California Cooperative Producers* (1947), 30 Cal.2d 240, 250 [181 P.2d 369, 170 A.L.R. 1009].)

We conclude that since appellants placed the note with the escrow holder upon instructions not to negotiate it until the payee complied with a condition precedent, and since the condition was not met, Western Host's assignment of the note conveyed no interest to Builders and Builders did not become a holder in due course.

When we consider the second issue, the liability of California Pacific Title Insurance Company for violation of its instructions, we are governed by the stated positions of the parties. Appellants expressed the view that if they suffered any loss because of the title company's violation of their instructions, the company would be liable to the extent of such loss (*Rianda* v. *San Benito Title Guar. Co.* (1950), 35 Cal.2d 170, 173 [217 P.2d 25]). Since we have concluded that appellants are not liable on the note and therefore not subject to loss, they can make no effective claim against the title company. Indeed at oral argument appellants stated that in the event the court were to hold that there were no delivery of the note "[w]e have no claim against the title company." We need not, therefore, discuss the issue of the title company's liability. For the same reason we do not analyze the contention of the title company that the appeal as to it was "not timely in that it was taken nearly five months after the nonsuit was granted."

Turning to the third issue, that is, the propriety of the judgments in favor of Carabao Special Products Company and Hayes Manufacturing Company, we have concluded that these judgments do not find substantiation in the record.

The evidence as to Hayes Manufacturing Company indicates that all negotiations for the sale of the involved chairs were transacted with the agent of Great Western Hotels, Inc., and that Hayes looked to it alone for payment. Indeed, a letter to this court from Mr. Milo Ayer states: "I am the attorney for Hayes Manufacturing Company. . . . I have decided not to file a brief on behalf [of] Hayes Manufacturing Company and am abandoning the matter so far as Hayes Manufacturing Company is concerned."

Turning to the judgment for Carabao Special Prod-

ucts Company, we do not find any basis upon which to hold appellants liable for the payment of the involved merchandise. The findings state that this company "sold certain drapes and accessories to defendant Great Western Hotels, Inc. . . ." The materials were "delivered to said motel and have been used by plaintiffs in their operation thereof." Respondent company fails to develop any legal basis for imposition of liability upon appellants.

The record reveals that Carabao's office manager, Mr. Walsh, received a purchase order from Great Western Hotels, Inc. Admittedly the manager had been told that this organization was "purchasing and furnishing motel sites which were in turn being turned over to private parties for exploitation, or operation." Carabao attempts to impose liability upon the appellants for Great Western's contract upon the grounds that appellants specified to Great Western's agent the color of the drapes, that the agent in turn conveyed the information to Carabao, that Carabao billed Pfeiffer, the agent for Great Western, and that this bill was sent to appellants' motel.

Upon completion of the job, Dwyer, the owner of Carabao, called the motel in an effort to obtain payment for the drapes, and Mrs. Borgonovo allegedly stated, "We won't pay for the drapes until you make some alterations that had to be made." Subsequent to the rendition of the alterations Dwyer again phoned the motel and Mrs. Borgonovo allegedly told him, "we are having trouble with the tassels on the traverse rods. . . . We won't pay for the drapes until everything's satisfactory." Dwyer admitted that these conversations were "after the drapes were installed . . . within a month or two after the drapes were installed." Therefore, Carabao's argument that ". . . [appellants] specifically told respondent that they would pay respondent when the drape installation was satisfactory, thus inducing respondent to relax its requirement of payment immediately on installation," finds no support in the record.

Continuing in a similar vein, Carabao makes the following statement of facts: "Checks issued by Henderson in payment of suppliers had commenced 'bouncing' . . . and, early in May, 1956, appellants stated that they were holding the sum of $50,000 in abeyance from Henderson for payment of suppliers and that they 'would see that all suppliers were paid.' " The record actually indicates that Henderson's check to Aladdin Floor Covering Company was not initially paid, but that it was finally honored and that appellants made the statement

as to holding in abeyance the $50,000, not to Carabao, but to the manager of Aladdin Floor Covering Company, Mr. Brochier. The record does not indicate that Carabao ever obtained notice of this conversation before Brochier's testimony on behalf of Aladdin Floor Covering Company.

Carabao's citation of section 3543 of the Civil Code that "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer" avails it nothing; appellants committed no act of negligence.

The claim that appellants are liable in assumpsit is likewise not supported by the record. Unless appellants received some new benefit, their alleged promise to pay for Great Western's debt lacked consideration. "[A] promise by one to fulfill his own contract with another is no consideration for a promise by a third party. . . . *Ellison* v. *Jackson Water Co.*, 12 Cal. 542; [553] . . ." (*Tipton* v. *Tipton* (1933), 133 Cal. App. 500, 506 [24 P.2d 525].) Since Carabao's obligation to Great Western obviously carried the implied promise that the work would be done in a satisfactory manner, and since Henderson's obligation to furnish the motels likewise carried an implied parallel promise that the motels be furnished in a satisfactory manner, appellants received no new or different consideration for Mrs. Borgonovo's alleged promise.

While briefs have been filed by respondents Louis C. Lucas, doing business as Aladdin Floor Covering Company; National Furniture and Appliance Company, a copartnership, and Louis Frankfield, Ben Frankfield, and Rolf P. Stone, doing business as National Furniture and Appliance Company, appellants allege no errors in respect to the judgment in their respective favors. At the oral argument appellants admitted that they did not question the judgment in favor of Aaron Schultz and Sons, Inc. The court also rendered judgment against Consolidated Linen Corporation; T. A. Jordan, doing business as Acme Painting Service; Peninsula Sales Company, a corporation; and Sam Baranzoff and Max J. Webber, doing business as El Camino Supply, a partnership. The final provision of the judgment granted appellants as against respondents Western Host, Incorporated, and F. W. Henderson $23,-397.72 for monies due appellants under the agreement with said parties, (b) for $11,077.19 with interest, (c) for $25,000 general damages, and (d) for costs of suit.

We reverse the judgment as to Pacific Commercial Builders, Theodore Walker, Carabao Special Products Company and

Hayes Manufacturing Company, and in all other respects affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied July 19, 1960, and the petitions of appellants and of respondents Pacific Commercial Builders and Theodore S. Walker for a hearing by the Supreme Court were denied August 24, 1960.