No. 13026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

LOUIE A. KOVASH et al.,

Plaintiffs and Respondent,

-vs-

KENNETH R. KNIGHT,

Defendant and Appellant.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellant:

Dzivi, Conklin, Johnson and Nybo, Great Falls,
Montana
William Conklin argued, Great Falls, Montana

For Respondent:

Huppert and Swindlehurst, Livingston, Montana
Arnold Huppert, Jr. argued, Livingston, Montana
Joseph T. Swindlehurst appeared, Livingston, Montana

---

Submitted: December 8, 1975

Decided: FEB - 3 1976

Filed: FEB 3 1976

Thomas J. Kearney

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court, Park County, in favor of plaintiffs Louie A. Kovash and Ottilia C. Kovash, in an action to collect a promissory note. Trial was held before the Hon. Nat Allen, sitting without a jury.

The Kovashes sometime prior to the fall of 1972, undertook to build a motel/convention center in Livingston, Montana. Their trials and tribulations in developing the project prior to retaining architect Kenneth K. Knight, defendant herein, are of no import to this opinion other than to note that Kovashes had considerable difficulty in getting necessary financial backing to promote the project.

After working with several architects they contacted Knight, an architect in Great Falls, and asked if he could design the project at a given figure. When Knight agreed that he could, he was hired as the architect in the fall of 1972. After performing about $10,000 in architectural services on the preliminary plans, it became clear to the parties that Kovashes lacked the financial resources to go ahead. A proposal was made to Knight by Kovashes that he not only act as architect, but that he go ahead and build the project using his credit to finance it and then lease it back to Kovashes. Knight agreed to go ahead, subject to Kovashes obtaining certain financing. On October 9, 1973, an agreement was entered into between Kovashes and one John Munn, a fiscal agent, to get them fiscal assistance. This agreement was to run for 60 days.

Knight continued to prepare plans for the project to a point where he had invested in work time at least $50,000. At that time Kovashes' proposed financing ran into difficulty. It was finally decided by the parties to finance the project with an

- 2 -

industrial revenue bond sale by the city of Livingston. The October 9 agreement was followed on October 18, 1973, by an option between Kovashes and Knight wherein Kovashes gave Knight a written option to purchase the land for $153,000. The option provided that Knight could exercise same at any time within 130 days by delivery of a written notice. In that event, Kovashes had 30 days to furnish title insurance and Knight would then have an additional 90 days to pay the purchase price, at which time Kovashes would have to deliver a warranty deed.

According to Knight, at the time of the October 9 agreement between Kovashes and John Munn, their fiscal agent, Kovashes wanted to be the lessees, and in the months ahead they worked at the problem of financing the project by means of the industrial revenue bond method. The people who were to underwrite the bonds told the parties that in the bond offering they would have to reveal to the public not only the fiscal condition of Knight, who was to be the owner, but also that of the lessees, Kovashes. They were given 60 days to come up with a cosigner of sufficient financial stature, or they would lose the opportunity to be the lessees. Kovashes failed in their attempt.

On January 19, 1974, at the insistence of Kovashes, all parties, with counsel, met in Livingston where they entered into a new agreement entitled "Contract for Purchase". Under this contract for purchase the Kovashes agreed to sell to Knight for a total price of $194,000, by selling in addition to the real property, the liquor license, a Best Western Motel franchise, all rights to the feasibility studies, soil tests, site surveys and other information, along with their goodwill.

At that same time, Knight paid $5,000 earnest money and agreed to pay $148,000 within 90 days for the real estate. In addition, he executed a note in the amount of $41,000 which was delivered to the First Security Bank of Livingston, Montana, as

escrow agent, together with the assignment of the liquor
license. Upon payment of this note, the escrow agent was to de-
liver to Knight the assignment of the liquor license, but was
to retain $27,000 until the Montana Liquor Control Board approved
the transfer.

When the transaction was closed, Knight paid $153,000
in cash, received the deed for the property and built his motel.
However, he did not pay the $41,000 promissory note and Kovashes
brought this action to collect it.

These issues are raised for this Court's consideration
on appeal. Did the trial court err:

1. In finding that the promissory note was not signed
under duress?

2. In finding that the 15 day written notice of default
condition did not apply to the promissory note?

3. In finding that Kovashes did not fail to prove
delivery or ownership of the note?

4. In finding that the First Security Bank was not an
indispensable party?

5. In entering judgment allowing Kovashes to retain the
liquor license in return for a credit of $27,000 against the amount
due on the promissory note, or in the alternative in computing
interest and attorney fees on the full balance of $41,000, rather
than on the reduced balance of $14,000 after allowing the credit of
$27,000?

We find no error in the court's not finding duress. Knight
argues that he had a deal, by the October 18 agreement, to purchase
the land for $153,000; that he faced "closing" the bond deal and
that he had to have the property before doing so; that Kovashes
threatened not to honor the option, thereby putting the bond sale
in question unless he purchased the liquor license and the other
interests; and that forcing these extra expenses put him "over a

- 4 -

barrel" in such a manner as to constitute a signing under duress. Knight supports his argument by citing Pecos Construction Co. v. Mortgage Investment Co., 80 N.M. 680, 459 P.2d 842 and 25 Am. Jur. 2d, Duress and Undue Influence, § 19.

Assuming arguendo that Knight's allegations are true, all that Kovashes did was to threaten not to honor the option, and a mere threat to breach does not constitute duress. 25 Am. Jur. 2d, Duress and Undue Influence, § 19. Here there is no evidence that Knight ever tried to exercise the option and was refused. This distinguishes this case from the authority cited by Knight. Here, Kovashes did nothing.

Here we note that throughout all of the early negotiations between the parties it is clear that Kovashes expected to operate the motel facility. The October 9, 1973 agreement with John Munn indicated Kovashes were to operate the facility but provided that if they could not get a lease guarantor in 60 days, Munn could sell the entire package, liquor license and all for $194,000. We find no reason why after this agreement, that they would enter into an agreement a week later to sell to Knight for $153,000, unless it was that they expected to operate the motel and use their liquor license. Knight admits he needed a liquor license and that he intended to sell it to the ultimate operators at a hoped for price of $41,000. This indicates Knight entered into the January 19, 1974, negotiations with his eyes open and with benefit of counsel. We find no merit to his claim of duress.

Issue 2, the trial court's finding that the 15 day written notice of default did not apply to the promissory note. We find no merit to Knight's argument nor were we cited any case authority to support it. Here, we are faced with two agreements, the con- tract for purchase, which contained the notice in writing provision, and the separate promissory note which fell due on April 18, 1974.

- 5 -

Knight fulfilled the contractual obligation by paying the $153,00, but thereafter failed to pay off the note when it became due April 18, 1974. The testimony clearly indicates that the "notice" provision was intended to apply only to the contract for purchase and not to the promissory note. Further, the testimony clearly indicated he knew the note was due April 18. It had been called to his attorney's attention more than 15 days before the due date and he refused on cross-examination to say he would have paid it.

Issue 3 questions the court's finding that Kovashes did not fail to prove delivery or ownership of the note. Knight argues the note is unenforceable by Kovashes because it was delivered to the escrow agent (the bank) and not directly to Kovashes. He calls this a "conditional delivery" and ineffectual.

If this ingenious argument were to prevail, the note was not enforceable by anyone. The bank could not enforce it because it is not a "holder" as defined under the Uniform Commercial Code because it is not a payee or endorsee. 12 Am Jur 2d, Bills and Notes, §1070. Here, Kovashes deposited the deed in escrow and Knight deposited a note and mortgage. Even though the note was not delivered to payee directly, we hold there was a sufficient delivery under these facts. The fact the bank held the escrow did not make the bank an indispensable party to the action. Stewart v. Santa Rosa Mining, 62 C.A.2d 201, 144 P.2d 31. Therefore, we find no merit to Issue 3 or Issue 4.

Finally, the trial court's judgment allowing interest and attorney fees on the $41,000 was error. The court's conclusion of law No. IV authorizes the cancellation of the assignment of the liquor license in return for a $27,000 credit on the $41,000 principal and paragraph III of the judgment cancels the assignment.

Kovashes used the liquor license at a bar operated by them in Livingston during the full period of the litigation. At

trial they testified that they were willing to keep the license and credit Knight with $27,000, but the trial court refused on the ground such testimony concerned a matter of settlement.

Thereafter, the trial court entered judgment accomplishing the very settlement offered by Kovashes. The error made by the court was in its failure to credit Knight with the $27,000 before computing interest and attorney fees. The attorney fees should be reduced from $4,000 to $1,410; the interest from $3,780.06 to $1,303.28. This reduces the total judgment from $21,880.06 to $16,813.28.

The cause is remanded to the district court to comply with this decision.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 7 -