[No. F050279. Fifth Dist. Apr. 8, 2008.]

OMER H. BRAWLEY, Plaintiff, Cross-defendant and Appellant, v.
J.C. INTERIORS, INC., Defendant, Cross-complainant and Appellant;
OLIVEWOOD MEDICAL ARTS CENTER OWNERS ASSOCIATION
et al., Respondents.

[No. F051448. Fifth Dist. Apr. 8, 2008.]

OMER H. BRAWLEY, Plaintiff, Cross-defendant and Appellant, v.
J.C. INTERIORS, INC., Defendant, Cross-complainant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and IV.

## COUNSEL

Triebsch, Frampton, Doruis & Lima and Cory B. Chartrand for Plaintiff, Cross-defendant and Appellant.

Law Offices of Kari L. Ley and Kari L. Ley for Defendant, Cross-complainant and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter and Kurt F. Vote for Respondents.

## OPINION

**ARDAIZ, P. J.—**

### INTRODUCTION

After fire destroyed an office building known as the Olivewood Medical Arts Center, the four owners of the building contracted with a builder (J.C. Interiors, Inc.) to rebuild the basic structure or "shell" of the building. The contract called for five separate installment payments (or "draws") of 18 percent of the $532,226 contract price (approximately $96,000 each) plus a "retention" of 10 percent to be paid 30 days after completion of the project. When the owners failed to pay the third draw after the builder claimed it was due, the builder walked off the job. The owners eventually hired someone else to finish the project. One of the four owners, Omer H. Brawley, sued the builder for lost rents Brawley contended he would have earned if the project had been completed by the deadline set forth in the contract. The builder sued the owners and their owners association for nonpayment of the third draw. Three of the owners and the association paid a $100,000 settlement to the builder. Brawley's suit against the builder, and the builder's suit (now only against the fourth owner, Brawley) went to trial.

The month-long trial included detailed testimony and documentary evidence of the progress and occasional setbacks of the construction project, of the owners' dealings with the builder, and of the owners' squabbles with each other. The results of the trial were perhaps best described by Brawley's counsel, Mr. Chartrand, who stated at a posttrial hearing, "the jury socked it to both sides here." The jury found that both sides breached the contract. The jury awarded Brawley $19,800 in damages for J.C.'s breach, and awarded J.C. $32,551.52 for Brawley's breach.[1] The court offset Brawley's $32,551.52 obligation to J.C. with the $100,000 settlement received by J.C. from the other three owners and the association, thus reducing Brawley's obligation to J.C. to zero. The court entered judgment for Brawley in the amount of $19,800.

The court found J.C. to be the prevailing party under Code of Civil Procedure section 1032 and awarded costs to J.C. in the amount of $26,326. The court denied J.C.'s motion for attorney fees and refused to add any prejudgment interest to J.C.'s recovery of zero.

In the published portions of our opinion, we address issues pertaining to Code of Civil Procedure section 877 and Civil Code section 3260.

Code of Civil Procedure section 877 provides in pertinent part that when some of the co-obligors on a contract settle with a plaintiff in good faith before verdict or judgment and obtain a release, the release "shall reduce the claims against the others . . . in the amount of the consideration paid for it." (Code Civ. Proc., § 877, subd. (a).) How does a court determine the value of "the claims against the others" (i.e., the value of the plaintiff's claims against the nonsettling co-obligors) when "the others" also sue the plaintiff for breach of the same contract and the jury finds that both sides breached the contract and both sides were damaged? In the case before us, the only nonsettling obligor (or "other") was Brawley. The court valued J.C.'s claim against Brawley at $32,551.52, then reduced this claim to zero by virtue of the $100,000 settlement received by J.C. from Brawley's co-obligors, then entered judgment for Brawley in the amount of his damages caused by J.C.'s breach ($19,800). We hold in part I. of our opinion, however, that the value of a plaintiff's "claims against the others" is the amount the plaintiff would have recovered in a judgment against the others if there had been no

---

[1] To be precise, we note that the jury's special verdict found J.C.'s breach caused $19,800 in damages to Brawley, and that none of this $19,800 could reasonably have been avoided by Brawley. The special verdict also found Brawley's breach caused $44,551.52 in damages to J.C., but that $12,000 of this $44,551.52 in damages could reasonably have been avoided by J.C. No one disputes that $32,551.52 (i.e., $44,551.52 minus $12,000) is what J.C. would have been awarded in a judgment if Brawley had not also sued J.C. and if there had been no settlement by Brawley's co-obligors. We will thus refer to this $32,551.52 amount as "J.C.'s unmitigable damages" or sometimes simply "J.C.'s damages."

settlement prior to the verdict or judgment. Thus the court should have valued J.C.'s claim at $12,751.52 ($32,551.52 minus $19,800), reduced this to zero, and entered a judgment awarding no damages to either side.

Subdivision (g) of Civil Code section 3260 allows a court to award attorney fees to a "prevailing party" in an action brought under circumstances specified in the statute. In part III. of our opinion we hold that this statute, like similar statutes, gives the court discretion to determine whether there is a "prevailing party" for purposes of an award of attorney fees.

## THE APPEALS AND THE PARTIES' CONTENTIONS

Presently before us are four appeals. Both Brawley and J.C. have appealed from the judgment. This is case No. F050279. In case No. F051448, J.C. appeals from the trial court's postjudgment order denying J.C.'s request for attorney fees, and Brawley appeals from what he describes as a postjudgment "order . . . awarding J.C. INTERIORS $17,903.32 in prejudgment interest . . . ," even though the court in fact awarded no prejudgment interest to J.C. Interiors.

### The Appeals from the Judgment (F050279)

Brawley contends in his F050279 appeal that the court erred in finding J.C. to be the "prevailing party" for purposes of the award of costs to J.C. He also contends that the court erred in a prejudgment ruling finding the $100,000 settlement between the three other owners and J.C. have been made in good faith. This contention too is eye-catching in that although the court's finding of a good faith settlement served to cut off certain rights of Brawley to seek indemnity from the other owners (Code Civ. Proc., § 877.6), there is nothing to indemnify because J.C. obtained no monetary judgment against Brawley. Furthermore, credit for the $100,000 settlement turned what would have been a $12,751.52 judgment in favor of J.C. and against Brawley ($32,551.52 in J.C. damages for Brawley's breach minus $19,800 in Brawley damages for J.C.'s breach) into a $19,800 judgment in favor of Brawley and against J.C.

J.C. contends in its appeal from the judgment (F050279) that the court erred in awarding Brawley the $19,800 judgment. J.C. contends that the court should have offset J.C.'s $32,551.52 in damages with Brawley's $19,800 in damages, leaving J.C. with a net award of $12,751.52, which then should have been reduced to zero due to credit for the $100,000 settlement. Under J.C.'s calculation, the correct judgment would have awarded nothing to J.C. and nothing to Brawley.

*The Appeals from the Postjudgment Order (F051448)*

The court's judgment included a determination that J.C. "is the prevailing Party pursuant to California Code of Civil Procedure Section 1032." A later, postjudgment order fixed the amount of costs awarded to J.C. at $26,326. The same postjudgment order also denied J.C.'s request for prejudgment interest and J.C.'s motion for attorney fees.

As aforementioned, J.C.'s appeal from the postjudgment order contends that the court erred in refusing to award J.C. any attorney fees. Brawley's appeal from the postjudgment order contends that the court erred in "awarding J.C. INTERIORS $17,903.22 in pre-judgment interest" even though the court did not in fact award J.C. any prejudgment interest.

In part I. of this opinion we will address J.C.'s appeal from the judgment. In part II. we will address Brawley's appeal from the judgment. In part III. we will address J.C.'s appeal from the postjudgment order denying J.C. attorney fees. In part IV. we will address Brawley's appeal from the postjudgment order. As we shall explain in part I., we agree with J.C. that the trial court erred in entering the $19,800 judgment for Brawley. The court should have offset Brawley's $19,800 in damages caused by J.C. with J.C.'s $32,551.52 in damages caused by Brawley. The judgment therefore should have awarded Brawley zero, not $19,800. We find the remaining contentions made by both parties (addressed in parts II., III. & IV.) to be without merit. On appeal No. F050279 we will remand the matter to the trial court and direct that court to amend the judgment so that it awards each party zero. The trial court may also reconsider whether it wishes to make an award of costs to one of the parties. On appeal No. F051448 we will affirm the court's postjudgment order denying J.C.'s motion for attorney fees.

## I.

## J.C.'S APPEAL FROM THE JUDGMENT (F050279)

■ After the jury determined that Brawley's breach caused $32,551.52 in unmitigable damages to J.C., and that J.C.'s breach caused $19,800 in damages to Brawley, the court gave Brawley credit for the $100,000 settlement paid to J.C. by Brawley's former codefendants. The court determined that Brawley therefore owed J.C. nothing, and it then entered judgment in favor of Brawley for $19,800. J.C. contends that the court erred in that the court should have offset J.C.'s $32,551.52 in unmitigable damages caused by Brawley with Brawley's $19,800 in damages caused by J.C., should have viewed the net result of the jury's verdict to be that Brawley owed J.C. $12,751.52 (i.e., $32,551.52 minus $19,800), should have given Brawley

settlement credit for the net amount of $12,751.52 he otherwise would have been obligated to pay to J.C., thereby reducing Brawley's obligation to J.C. to zero, and should have entered a judgment awarding nothing to either party. We agree with J.C.

■ Both sides rely on the language of Code of Civil Procedure section 877 itself, which states that a settlement made in good faith by one co-obligor "shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater." (Code Civ. Proc., § 877, subd. (a).) Brawley contends, and the trial judge apparently agreed, that the value of J.C.'s "claim" against Brawley was J.C.'s $32,551.52 in unmitigable damages. The jury's verdict, however, determined the actual value of J.C.'s claim to be $12,751.52. Both sides agree that if Brawley's former codefendants had not paid J.C. $100,000 in settlement of J.C.'s claims against them, and if the court had rendered judgment in the absence of any settlement, that judgment would have been a judgment of $12,751.52 in favor of J.C. and against Brawley (i.e., a "netting" of each side's damages). We do not think that the existence of the settlement serves to inflate the real value of J.C.'s claim to $32,551.52. To state this a bit differently, the settlement did not compel the court to value J.C.'s claim at $32,551.52 by ignoring J.C.'s own breach of the very same contract Brawley breached. The term "claims" in Code of Civil Procedure section 877 "appears to refer to a claim of liability" and "[i]n the context of litigation, a claim of liability against another party generally connotes a cause of action for damages." (*Reed v. Wilson* (1999) 73 Cal.App.4th 439, 444 [86 Cal.Rptr.2d 510].) The value of J.C.'s "claims against" Brawley (Code Civ. Proc., § 877, subd. (a)) was the amount J.C. would have recovered in litigation against Brawley if there had been no settlement "before verdict or judgment" (Code Civ. Proc., § 877) by Brawley's co-obligors—$12,751.52.

■ Some courts allow a nonsettling defendant to introduce a settlement into evidence, and then instruct the jury to reduce any verdict against the nonsettling defendant by the amount paid in settlement. (See *Helling v. Lew* (1972) 28 Cal.App.3d 434, 440 [104 Cal.Rptr. 789].) Other courts inform the jury of a settlement but also instruct the jury that the jury's award of damages should be made without considering any amount that the plaintiff may have received in settlement and that "[a]fter you have returned your verdict, I will make the proper deduction from your award of damages." (Judicial Council of Cal. Civ. Jury Instns. (2008) CACI No. 3926; see also BAJI No. 14.64.) Still other courts take the view that "[t]he presentation of evidence concerning the amount or fact of settlement to the jury . . . is not only confusing, but also can lead to abuse in argument . . . ." (*Shepherd v. Walley* (1972) 28 Cal.App.3d 1079, 1083 [105 Cal.Rptr. 387].) For these courts, "an approved procedure is for the court to reduce the verdict award by the amount paid in settlement

before entering judgment on the verdict. [Citations.]" (*Syverson v. Heitmann* (1985) 171 Cal.App.3d 106, 111 [214 Cal.Rptr. 581].) In the present case the trial court took this third approach.

██ What makes this case different from any other published California appellate case is that here we have not only a settlement, but also a situation where each party has sued the other for breach of contract, and each party was found by the jury to have breached the contract. "A breach of contract may be total or partial. If the breach is total, the injured party has the right to terminate the contract. If the breach is partial, there is no right to terminate. [¶] . . . [¶] Any breach of contract, whether total or partial, causing measurable injury, gives rise to a claim for damages." (BAJI No. 10.86; see also *Borgonovo v. Henderson* (1960) 182 Cal.App.2d 220 [6 Cal.Rptr. 236]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 852.) The jury here was so instructed. The jury apparently concluded that each side partially breached the contract, or that at least the first party to breach committed a partial breach. The jury then determined that each party had been damaged by the other party's breach. In any event, a finding that each party breached the contract, and that each party is entitled to damages for the other's breach, is legally permissible. (BAJI No. 10.86; see also *Borgonovo, supra*, 182 Cal.App.2d 220; 1 Witkin, Summary of Cal. Law, *supra*, § 852.) In such a situation, the proper procedure for the court to take is to offset the jury's damages award findings against each other, just as the court would do if there had been no settlement, and to then apply the settlement credit to any net amount of damages the nonsettling defendant would have been liable for (here, $12,751.52) if there had been no settlement.

Brawley calls our attention to language in *Syverson v. Heitmann*, stating that "[w]here a plaintiff's settlement completely offsets the damages assessed against a nonsettling joint tortfeasor, it reduces the judgment to zero by operation of law. [Citation.]" (*Syverson v. Heitmann, supra*, 171 Cal.App.3d at p. 110.) He then argues that the "damages assessed against" Brawley were $32,551.52 and that J.C.'s settlement with Brawley's former codefendants "completely offsets" this $32,551.52 amount. We are not persuaded. Neither *Syverson* nor any other case cited by Brawley (or by J.C.) involves a situation in which each side has been damaged by the other's breach of the parties' contract. The jury in the case now before us was not asked to make any assessment of damages against a nonsettling joint tortfeasor (or nonsettling co-obligor). The jury was asked to, and did, calculate the amount of J.C.'s damages caused by Brawley's breach, and the amount of Brawley's damages caused by J.C.'s breach. Had the jury been asked to make an assessment of damages "against" anyone, it would have netted out J.C.'s $32,551.52 in unmitigable damages with Brawley's $19,800 in damages, and would have "awarded" J.C. the difference—$12,751.52. It did not take this last step because it was not asked to do so. But $12,751.52 was the true value of J.C.'s

"claim" (Code Civ. Proc., § 877, subd. (a)) because this is the amount of the judgment J.C. would have won if there had been no settlement before J.C. litigated its claim.

■ Brawley next points out that Code of Civil Procedure section 877 "assures that a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one . . . and all of his claim from another." (*Reed v. Wilson, supra,* 73 Cal.App.4th at p. 444; accord, *Wouldridge v. Zimmerman* (1971) 21 Cal.App.3d 656, 658 [98 Cal.Rptr. 778].) " '[W]hen the injury arises from a single act, [a plaintiff] cannot, by suing each wrongdoer alone, convert a joint into a several [injury], and thereby secure more than one compensation for the same injury.' " (*May v. Miller* (1991) 228 Cal.App.3d 404, 410 [278 Cal.Rptr. 341], quoting *Butler v. Ashworth* (1895) 110 Cal. 614, 618–619 [43 P. 4].) Brawley then argues that a reversal of his verdict for $19,800 would result in "a double recovery to J.C. Interiors." Again, we do not agree. The trial court's judgment (awarding $19,800 to Brawley and nothing to J.C.) gave J.C. no recovery at all. The judgment we will instruct the court to enter on remand (awarding nothing to Brawley and nothing to J.C.) will still give J.C. no recovery at all. The one and only recovery J.C. has obtained is the settlement it received from Brawley's former codefendants.

## II.*

### BRAWLEY'S APPEAL FROM THE JUDGMENT

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

### J.C.'S APPEAL FROM THE POSTJUDGMENT ORDER

The court's postjudgment order stated in pertinent part: "Exercising its discretion, the court denies J.C. INTERIORS motion for attorney's fees. Accordingly, IT IS ORDERD [*sic*], that J.C. INTERIORS motion for attorney's fees is denied." In this case neither side made any contention that their contract had an attorney fee clause. Rather, J.C. contends that Civil Code sections 3260 and 3260.1 required the court to award J.C. attorney fees.

Civil Code section 3260 provides in relevant part:

---

*See footnote, *ante*, page 1126.

"(b) The retention proceeds withheld from any payment by the owner from the original contractor . . . shall be subject to this section.

"(c) Within 45 days after the date of completion, the retention withheld by the owner shall be released. 'Date of completion,' for purposes of this section, means any of the following:

"(1) The date of issuance of any certificate of occupancy covering the work by the public agency issuing the permit.

"(2) The date of completion indicated on a valid notice of completion recorded pursuant to Section 3093.

"(3) The date of completion as defined in Section 3086.

" . . . In the event of a dispute between the owner and the original contractor, the owner may withhold from the final payment an amount not to exceed 150 percent of the disputed amount. [¶] . . . [¶]

"(g) In the event that retention payments are not made within the time periods required by this section, the owner or original contractor withholding the unpaid amounts shall be subject to a charge of 2 percent per month on the improperly withheld amount, in lieu of any interest otherwise due. Additionally, in any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs."

Civil Code section 3260.1 regarding the payment of progress payments provides: "(b) Except as otherwise agreed in writing, the owner shall pay to the contractor, within 30 days following receipt of a demand for payment in accordance with the contract, any progress payment due thereunder as to which there is no good faith dispute between the parties. In the event of a dispute between the owner and the contractor, the owner may withhold from the progress payment an amount not to exceed 150 percent of the disputed amount. If any amount is wrongfully withheld in violation of this subdivision, the contractor shall be entitled to the penalty specified in subdivision (g) of Section 3260."

The jury's special verdict answered "No" to the question "Was there a good faith dispute regarding the payment of the 3rd draw payment to J.C. INTERIORS, INC., under the parties contract[?]" The jury's special verdict also answered "No" to the question "Was there a good faith dispute regarding the payment of the retention payment to J.C. Interiors, INC., under the parties' contract?" The linchpin of J.C.'s contention that the court was required to award J.C. attorney fees is J.C.'s contention that the trial court

was required to deem J.C. to be the "prevailing party" within the meaning of Civil Code section 3260, subdivision (g). We disagree. Rather, we agree with the trial court's expressed conclusion that it had "discretion" as to whether to award J.C. attorney fees.

 Unlike Code of Civil Procedure section 1032, discussed above in part I. of this opinion, Civil Code section 3260, subdivision (g) contains no definition of the term "prevailing party." "[C]ourts in cases involving . . . statutes which provide that the prevailing party 'shall' recover attorney fees also have concluded that a court has the discretion to find there is no prevailing party, even though the statute does not expressly say so. (See, e.g., *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568, 1574 [26 Cal.Rptr.2d 758] (*Heather Farms*) [Civ. Code, § 1354, subd. (f)]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1277–1278 [64 Cal.Rptr.2d 659] (*Gilbert*) [Civ. Code, § 3344, subd. (a)]; *Damian v. Tamondong* (1998) 65 Cal.App.4th 1115, 1128–1130 [77 Cal.Rptr.2d 262] . . . [Civ. Code, § 2983.4].) The determination of whether there is a prevailing party is to be made 'on a practical level' after considering what each party accomplished via the litigation. (*Heather Farms, supra*, at p. 1575; *Gilbert, supra*, at p. 1277.)" (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1016–1017 [113 Cal.Rptr.2d 625].) In construing a statute which gives the trial court discretion to determine whether there has been a prevailing party (Civ. Code, § 1717), the California Supreme Court has stated: "[W]e hold that in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources. The prevailing party determination is to be made only upon a final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions.' [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 [39 Cal.Rptr.2d 824, 891 P.2d 804].)

"Generally, where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the proper decision for that of the trial judge. The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. [Citations.]" (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 [76 Cal.Rptr.2d 691].) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418]; see *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 [243 Cal.Rptr. 902,

749 P.2d 339]; accord, *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) "The burden is on the party complaining to establish an abuse of discretion . . . ." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; see *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718, 703 P.2d 58].) "[T]he showing is insufficient if it presents facts which merely afford an opportunity for a difference of opinion." (*People v. Stewart* (1985) 171 Cal.App.3d 59, 65 [215 Cal.Rptr. 716]; accord, *In re Marriage of Rosevear, supra,* 65 Cal.App.4th at p. 682.)

J.C. argued to the jury that it did not breach the contract. The jury found that J.C. did breach the contract. J.C. argued to the jury that it was not negligent in its construction of the building shell. The jury found that J.C. was negligent in its construction of the building shell. J.C. sought more than $120,000 for Brawley's breach of the contract. The jury found that J.C.'s unmitigable damages were $32,551.52, but also that J.C.'s breach caused $19,800 in damages to Brawley. The trial court's judgment awarded $19,800 to Brawley and awarded J.C. nothing. Although, as we explained in part I. of this opinion, the trial court should have also awarded Brawley nothing, the fact remains that J.C. emerged from this hard-fought battle with a net positive of $12,751.52 which was then reduced to zero because of the prejudgment settlement. In assessing the extent to which J.C. succeeded and failed in its contentions (*Hsu v. Abbara, supra,* 9 Cal.4th 863), the court acted well within its discretion to refuse to find J.C. to have been the prevailing party for purposes of Civil Code section 3260, subdivision (g). The court's minute order denying J.C.'s motion for attorney fees was issued one month before its final order. The court's minute order expressly stated that "[i]n summarizing this litigation and with the benefit of hindsight, it does not appear J.C. Interiors exited in better condition than it began." Although we concluded in part I. of this opinion that the court erred in entering judgment in favor of Brawley for $19,800, we see no reasonable probability that the correction of this judgment would cause the trial court to conclude that J.C. was the prevailing party for purposes of Civil Code section 3260, subdivision (g). The corrected judgment will still award J.C. nothing on its claims against Brawley.

## IV.*

### BRAWLEY'S APPEAL FROM THE POSTJUDGMENT ORDER

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1126.

## DISPOSITION

The judgment awarding Brawley $19,800 is reversed. The matter is remanded to the superior court with directions to enter a judgment awarding Brawley nothing and awarding J.C. Interiors, Inc., nothing. The trial court may also reconsider whether it wishes to make an award of costs to one of the parties. Both sides to bear their own costs on appeal.

Vartabedian, J., and Levy, J., concurred.

On April 30, 2008, the opinion was modified to read as printed above.