Filed 10/24/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| VOUGHT CONSTRUCTION INC.,<br>      Plaintiff and Appellant,<br>v.<br>JAY STOCK,<br>      Defendant and Respondent. | A164823<br><br>(Alameda County<br>Super. Ct. No. RG 20067174) |

Vought Construction Inc. (Vought) appeals from a judgment following a bench trial on its claims against homeowner Jay Stock. Vought sought recovery of the balance due on his contract for the renovation of a house owned by Stock, additional compensation pursuant to a disputed change order, and penalties for the violation of a prompt-payment statute, Civil Code section 8800 (section 8800). Stock did not dispute the unpaid amount Vought had earned for finished work under the terms of their agreement as modified by approved change orders, but he disputed the claim for additional compensation and asserted an offsetting claim for liquidated damages for delay. The court held that Vought was entitled to the undisputed balance due plus approximately half the disputed amount it claimed in additional compensation; that Stock was entitled to approximately half the amount he claimed as liquidated damages; and that Stock had not violated section 8800 by withholding final payment pending resolution of the controversy. The court held that neither side had prevailed, so that neither was entitled to attorney

1

fees under section 8800 or to costs of suit under Code of Civil Procedure section 1032.

We conclude that the trial court correctly ruled that the recent case of *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.* (2018) 4 Cal.5th 1082 (*United Riggers*) did not prohibit Stock from temporarily withholding payment, and did not abuse its discretion in holding that neither party was the prevailing party for the purpose of awarding attorney fees under section 8800. However, Vought was the prevailing party for the purpose of recovering costs under Code of Civil Procedure section 1032.

**Factual and Procedural History**

In September 2019, Stock and Vought entered a modified form contract for a home renovation project. They replaced the form's references to "architect" with "owner" because Stock's architect had retired, and Stock intended to perform the project-administration role that the form provides will be performed by the project's architect.

The contract stated a "contract sum" of $374,000[1] to be paid in installments for the specified work. It required Vought to substantially complete the work by January 13, 2020, subject to potential adjustments. If Vought failed to complete the work by the adjusted date, Stock was entitled to $300 per day of delay as liquidated damages. Vought was required to submit a biweekly application for payment (AFP). Stock was to pay, within seven days of receiving an AFP, a sum calculated as follows: Determine the portions of the contract sum allocable to completed work and to materials and equipment procured, subtract payments already made, and subtract any

---

[1] Dollar amounts in this opinion are rounded to the nearest $1,000.

amount for which Stock had wholly or partly withheld[2] or nullified an AFP based on, inter alia, evidence that the project would not be completed by the deadline and that the unpaid contract balance would not cover liquidated damages due for delay.[3]

Over the course of the project, Stock approved eight change orders or other adjustments that raised the agreed contract sum by a total of $69,000, to $442,000. The parties also agreed to extend the substantial completion date to February 11, 2020.

The problems arose from a "relatively small" component of the project that the court described as "installation of some fairly particular and involved railings that would match . . . ones that [Stock] already had on the interior of the home." The court found that the railings were "sophisticated and complicated" and "required a significant amount of detail." Further, "Stock was under the impression that these railings could be . . . purchased, ordered,

_____

[2] The contract referred to Stock having "withheld" or "nullified" AFPs because the original form provided for the contractor to submit AFPs to the architect, who would in turn either certify them to the owner for payment or withhold or nullify them if certain conditions were unmet.

[3] The contract states: "[T]he amount of each progress payment shall be computed as follows: [¶] .1 Take that portion of the Contract Sum properly allocable to completed Work . . . ; [¶] .2 Add that portion of the Contract Sum properly allocable to materials and equipment [procured and stored on site] . . . ; [¶] .3 Subtract the aggregate of previous payments made by the Owner; and [¶] .4 Subtract amounts, if any, for which the Homeowner has withheld or nullified [an AFP] as provided in Section 9.5 of AIA Document A201-2007." Section 9.5 states that "The Architect may . . . withhold [an AFP] in whole or in part . . . to such extent as may be necessary in the Architect's opinion to protect the Owner from loss for which the Contractor is responsible . . . because of [¶] * * * [¶] .6 reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay . . . ."

3

[and] installed, without a sophisticated set of . . . architectural drawings, because in his experience that had not been required for the work . . . done inside his house," while Vought "did not have extensive experience with these railings and kept as a placeholder an amount . . . consistent with what they have used to price out other types of railing systems, which may have been possible to install without having detailed architectural drawings."

The court found that it was not until January 24, 2020—four months after work began in September 2019, and three weeks before the adjusted substantial completion date of February 11, 2020—that Vought confronted "the need to have [architectural] drawings and the need to get firm prices for the materials that it would take to make this installation," and raised the issues with Stock. Because of ensuing delays in obtaining the requisite drawings and materials—exacerbated by the onset of the COVID-19 pandemic—Vought was unable to finish installing the railings until August 2020. Work on all other parts of the project was substantially complete and approved by inspectors by late May 2020.

In April 2020, Vought sent Stock an AFP showing an updated contract sum of $73,000 then unpaid but did not request immediate payment. In May 2020 Vought sent another AFP effectively identifying the same $73,000 as unpaid, valuing the work left to perform as $41,000, and demanding immediate payment of $32,000. Stock made no payment.

In June 2020 Vought sent an AFP and a proposed $50,000 change order for the railings. The June AFP included the $50,000 and sought immediate payment of $78,000, equaling the difference (with minor variances) between the agreed, adjusted contract price of $437,000 (not including the unapproved $50,000 change order) and the payments to date of $363,000. Stock rejected the change order and made no payment.

4

In early July, Vought recorded a mechanic's lien against the property for $78,000, and filed this action. On August 6, Vought sent an AFP with a proposed "change order" for $10,000 in "legal costs" and interest on unpaid progress payments. The AFP demanded payment of $142,000 (including the value of both unapproved change orders). Stock made no payment.

On August 7, 2020, the project was completed. The work was satisfactory and priced by agreement at a value at least $73,000 more than Stock had paid, but Stock claimed he was entitled to withhold liquidated damages of $53,000.[4] Four months later, in December 2020, Stock paid Vought $20,000. At trial, Stock testified that "I realized I could [with]hold more than my liquidated damages claim, according to the law, but I didn't want more than my liquidated damages claim."

In November 2021 the action proceeded to a four-day bench trial. The judge asked counsel to submit tables specifying "exactly where the parties agree and where they disagree about costs and expenses and payments." Based on those tables and on the ensuing proceedings, the court made findings establishing that the undisputed difference between the agreed total price of the work and the amount already paid was $79,000 as of August 2020, and $59,000 as of December 2020. On Vought's claim for $50,000 in additional compensation for the railings, the court found Vought entitled to $31,000.

---

[4] At oral argument, Vought pointed out that, in his August 13 email to Vought refusing to make further payment, Stock asserted only that he was entitled to liquidated damages of "$39,000." The email in fact stated, "our contract stipulates that you will be obligated to pay liquidated damages of $300/day starting at the mutually agreed upon adjusted target completion date of 2/11/20. As of August 7, 2020, these damages total approximately $39,000" The $39,000 figure simply reflects an arithmetic error. August 7 is 178 days after February 11, so Stock's true claim as of August 13, 2020 was for 178 x $300, or $53,400.

On Stock's claim for liquidated damages, the court found that, no later than 30 days after Vought began work—that is, by October 18, 2019—it should have begun to investigate what it would have to do to timely procure and install the railings. The court thus found that 98 of the 178 days' total delay, from October 18, 2019, to January 24, 2020, were attributable to Vought, that none of the delay after January 24 was attributable to Vought, and that neither party "really controlled the outcome" after that date. The court thus awarded Stock $29,000 on his cross-claim for liquidated damages (98 days at $300/day).

As of one week after the completion date of August 7, 2020, the court thus held, the true unpaid balance—taking into account both the undisputed claims and the disputed claims as resolved at trial—was $81,000. After Stock's $20,000 payment in December 2020, the unpaid balance was $61,000. The court awarded Vought contractual interest at 1.5 percent per month on a balance of $81,000 from August 14 to December 4, 2020, and on a balance of $61,000 from that date onward. It found that each party had acted unreasonably in part, but in good faith, in withholding or demanding greater payment, and each had prevailed in part. It requested further briefing on the issue of attorney fees.

At a hearing four weeks later the court stated that it "has a fair amount of discretion in determining which party is the prevailing party," and considering the case "in its totality," the court held that "neither party is the prevailing party."[5] It ruled that "fees under Section 8800 are not appropriate because there was . . . a good faith dispute between the parties as to what

_____

[5] The day before that hearing, Vought filed a request for a written statement of decision, which the court orally denied as untimely because not made within 10 days of its oral ruling at the end of trial on November 10 (see Cal. Rules of Court, rule 3.1590).

needed to be paid." The court confirmed that it had read *United Riggers*, on which Vought relied, without indicating how it found the case distinguishable.

Following the hearing, the court signed a proposed order and judgment. The order states that "both parties have partially prevailed on claims asserted in their respective complaints, but neither . . . is the prevailing party." It awarded Vought $61,000 plus $17,000 in interest; it awarded neither party attorney fees or costs.

Vought made several postjudgment filings challenging the trial judge's rulings, all of which were addressed by a different judge. In all respects relevant to the issues on appeal, the court declined to disturb the trial judge's rulings and struck Vought's cost bill.[6] Vought filed a timely notice of appeal from the judgment and from the appealable postjudgment orders.

## DISCUSSION

### 1. *Standards of Review*

Vought's opening brief made four main contentions: (1) that Stock violated section 8800 as a matter of law; (2) that also as a matter of law Vought is the prevailing party under Code of Civil Procedure section 1032 and therefore the prevailing party for purposes of attorney fees under section 8800; (3) that delays due to Stock's bad-faith performance of his role as architect bar his liquidated damages claim; and (4) that the court erred in

---

[6] Vought filed a motion to vacate the judgment and enter a new one awarding remedies for a violation of section 8800 and a motion for a new trial based on, inter alia, the court's failure to find such a violation, its award of excessive liquidated damages, and its refusal to issue a statement of decision. Vought also filed a memorandum of costs and, after Stock moved to strike the memorandum, an opposition contending that Vought was the prevailing party entitled to costs as a matter of law under Code of Civil Procedure section 1032. The court denied Vought's motions to vacate the judgment and for a new trial and granted Stock's motion to strike the costs memo.

failing to order foreclosure of the mechanic's lien.[7] We review all four issues de novo. The first two attack only legal conclusions based on undisputed factual findings. (*Westfour Corp. v. California First Bank* (1992) 3 Cal.App.4th 1554, 1558.) Similarly, whether the undisputed evidence compelled a finding that Stock caused more than 80 days of delay is a legal issue we decide in the first instance. (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 651.) And, while an action to enforce a mechanic's lien sounds in equity (*Burton v. Sosinsky* (1988) 203 Cal.App.3d 562, 572), Stock does not claim that the court's failure to order foreclosure rests on a discretionary application of equitable principles, so we review de novo whether its findings compel relief. In supplemental briefing, the parties have agreed, as do we, that the standard for "prevailing party" status under Code of Civil Procedure section 1032 does not govern the "prevailing party" analysis for purposes of attorney fees pursuant to section 8800, and that we review for abuse of discretion the trial court's determination that no party prevailed for this purpose. (*James L. Harris Painting & Decorating, Inc. v. West Bay Builders, Inc.* (2015) 239 Cal.App.4th 1214, 1221–1222 (*Harris Painting*).)

   2. ***The Findings Do Not Establish a Violation of Section 8800***

   Section 8800 states, "(a) Except as otherwise agreed in writing . . . , the owner shall pay the direct contractor, within 30 days after notice demanding

---

[7] Vought also challenges the denial of its new trial motion, arguing that its request for a statement of decision was timely (see fn. 5, *ante*) and that failure to issue a timely requested statement mandates a new trial. (*Wallis v. PHL Assocs., Inc.* (2013) 220 Cal.App.4th 814, 826–827.) But as the trial court observed in denying Vought's motion, any such error would warrant relief only if it were prejudicial. (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1102.) Vought does not dispute the need to show prejudice but makes no attempt to do so; it has thus forfeited the issue.

payment pursuant to the contract is given,[8] any progress payment due as to which there is no good faith dispute between them. . . . [¶] (b) If there is a good faith dispute between the owner and direct contractor as to a progress payment due, the owner may withhold from the progress payment an amount not in excess of 150 percent of the disputed amount." As discussed below, an owner who violates the statute is liable for penalties, costs, and attorney fees. (§ 8800, subd. (c).)

Vought contends that section 8800 did not allow Stock to withhold the $79,000 progress payment undisputedly earned and unpaid in August 2020 based on his disputed claim for liquidated damages and the disputed change orders. Vought relies on *United Riggers*, *supra,* 4 Cal.5th 1082, which involved a dispute between a direct contractor (contractor) and a subcontractor under a parallel prompt-payment statute, Civil Code section 8814. That statute governs retention payments from contractors to subcontractors, but the analysis in *United Riggers* applies to all prompt payment statutes, including section 8800.[9]

In *United Riggers,* the subcontractor did work that was undisputedly satisfactory, complete, and valued at a certain price, and it also asserted

---

[8] The contract here altered the default rule of section 8800 by requiring progress payments within seven days of receipt of AFPs. Neither party disputes that the payment due within seven days of Stock's receipt of the August 6 AFP constituted a "progress payment" for purposes of section 8800.

[9] Civil Code section 8814 "is one of a series of provisions meant to ensure timely payment to contractors and subcontractors. To the extent possible, statutes relating to the same class of things, and sharing the same purpose or object, should be harmonized and construed similarly. [Citations.] . . . This interpretive principle applies to the prompt payment statutes [citations], which were largely modeled on each other and designed to accomplish the same end in a series of closely related contexts." (*United Riggers*, *supra*, 4 Cal.5th at p. 1090.)

disputed claims for additional payment based on proposed change orders. (*United Riggers*, *supra*, 4 Cal.5th at p. 1086.) Because of the disputed change orders, the contractor refused to pay the subcontractor the amount undisputedly due, and the subcontractor sued for penalties, costs, and fees under Civil Code section 8814. (*Ibid.*) *United Riggers* resolved an ambiguity in section 8814, determining that the statute does not permit a contractor to withhold payment based on any good faith dispute, but only based on disputes regarding the specific payment due. (*Id.* at p. 1089; see § 8800, subd. (b) [permitting withholding "[i]f there is a good faith dispute between the owner and direct contractor as to a progress payment due"].) The court relied on the remedial purpose of prompt-payment statutes, and noted that permitting contractors to withhold payment based on any dispute would give them a windfall—an interest-free loan of the amount not in dispute. Such an interpretation would enable a contractor to "chill the assertion of legitimate claims for additional compensation." (*United Riggers, supra,* at pp. 1092–1093.) Thus, the contractor was not entitled to withhold the amount admittedly due because of a dispute as to whether an additional amount was due.

The holding in *United Riggers* has no application here, to a good faith dispute over an amount that would reduce, rather than increase, the net amount otherwise due. The court stated that withholding is permitted "when payment would result in the [payee] receiving more than the minimum amount both sides agree is due." However, a payor may not withhold a payment "that is simply part of that undisputed minimum amount" merely because "a dispute has arisen over whether additional amounts over and above the [payment due] might also be owed." (*United Riggers*, *supra*, 4 Cal.5th at pp. 1097–1098; *id.* at p. 1085 ["Controversies concerning unrelated work or

10

additional payments above the amount both sides agree is owed will not excuse delay"].) A payor, in short, "must be able to present a good faith argument for why all or a part of the withheld monies themselves are no longer due." (*Id.* at p. 1098.)

Thus, Stock was not prohibited from withholding the $79,000 otherwise due based on his good faith claim for liquidated damages, which gave him "a good faith argument for why all or a part of the withheld monies themselves [were] no longer due." (*United Riggers*, *supra*, 4 Cal.5th at p. 1098.) Although Stock claimed only $53,000 in liquidated damages, section 8800 authorized him to withhold 150 percent of that amount, slightly more than the $79,000 otherwise undisputedly due Vought as of August 14, 2020.[10]

Vought's contention that the dispute over liquidated damages was not a dispute "as to [the] progress payment due," as required by subdivision (b) of section 8800,[11] is thus at odds with the purpose of section 8800 and the decision in *United Riggers*. Moreover, the contention disregards the language of the contract (see fn. 3, *ante*), which explicitly provides that approval of an AFP may be withheld based on "reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not

---

[10] The statute's 150 percent authorization reflects a recognition that the value of an owner's offsetting claim will often be uncertain, as when the claim is for defective workmanship. (*United Riggers*, *supra*, 4 Cal.5th at p. 1097.) As applied here, however, the 150 percent authorization seems at odds with the purpose of the statute, since there was no uncertainty that $53,400 was the maximum possible setoff to which Stock could be entitled. Indeed, Stock testified, "I realized I could [with]hold more than my liquidated damages claim, according to the law, but I didn't want more than my . . . claim." Nevertheless, the statute is explicit and unconditional.

[11] Section 8800, subdivision (b) permits withholding "[i]f there is a good faith dispute between the owner and direct contractor as to a progress payment due."

be adequate to cover actual or liquidated damages for the anticipated delay . . . ."

Vought contends that section 15.1.3 of the contract, entitled "Continuing Contract Performance," required Stock to pay the amount claimed despite his offsetting claim for liquidated damages. Section 15.1.3 states that "Pending final resolution of a claim, except as otherwise agreed in writing or as provided in Section 9.7 or Article 14,[12] the Contractor shall proceed diligently with performance of the Contract and the Owner shall continue to make payments in accordance with the Contract Documents." But as noted (see fn. 3, *ante*), section 9.5 of the contract states that "The Architect may . . . withhold [an AFP] in whole or in part to such extent as may be necessary . . . to protect the Owner from loss . . . because of [¶] . . . [¶] . . . reasonable evidence that the Work will not be completed within the Contract Time, and that the unpaid balance would not be adequate to cover actual or liquidated damages for the anticipated delay . . . ."[13] Vought contends that section 9.5 authorized Stock at most to withhold the amount of his liquidated damages claim, not 150 percent of that amount. However, section 8800, subdivision (b) states that "If there is a good faith dispute between the owner and direct contractor as to a progress payment due, the owner may withhold from the progress payment an amount not in excess of 150 percent of the disputed amount." That provision creates a statutory right, which the contract does not purport to restrict or waive, to withhold up to

---

[12] Section 9.7 governs the contractor's right to stop work upon a failure of payment, and article 14 concerns termination or suspension of the contract. Neither is relevant here.

[13] The August AFP for $142,000 included $59,000 in disputed and unapproved change orders and was "withheld" in full by Stock acting as architect. The trial court correctly held that the undisputed contract balance when Stock withheld payment was $79,000.

150 percent of a disputed amount from a progress payment if there is a good faith dispute as to that progress payment. Section 9.5 of the contract makes clear that a good faith dispute as to liquidated damages qualifies as a dispute "as to a progress payment due," triggering the owner's statutory right to withhold 150 percent of the disputed amount.

In short, the trial court properly held that Stock did not violate section 8800 by withholding payment of the amount due Vought pending resolution of his claim for liquidated damages.

2. ***The trial court had the discretion to determine which, if either, party prevailed for the purpose of awarding attorney fees under section 8800, subdivision (c).***

Section 8800, subdivision (c) states, "In an action for collection of the amount wrongfully withheld, the prevailing party is entitled to costs and a reasonable attorney's fee." Arguing that the definition of "prevailing party" in section 1032 controls, Vought's opening and reply briefs contend it is the prevailing party because it secured a "net monetary recovery." However, the definition in section 1032, discussed below, does not govern the meaning of the term in other statutory provisions that authorize an award of attorney fees. (*DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147; *Duff v. Jaguar Land Rover of North America, LLC* (2022) 74 Cal.App.5th 491, 504.) Indeed, Stock arguably was the prevailing party here because the court correctly held that he did not violate section 8800 by withholding less than 150 percent of the disputed amount of liquidated damages. However, we agree with the trial court that it had the discretion to determine which, if either, party prevailed.

The court's discretion was recognized in *Brawley v. J.C. Interiors, Inc.* (2008) 161 Cal.App.4th 1126, 1137. As the court there explained, "Unlike section 1032, . . . [the prompt-payment statute] contains no definition of the

13

term 'prevailing party.' '[C]ourts in cases involving . . . statutes which provide that the prevailing party "shall" recover attorney fees also have concluded that a court has the discretion to find there is no prevailing party, even though the statute does not expressly say so. [Citations] The determination of whether there is to be a prevailing party is to be made "on a practical level" after considering what each party accomplished via the litigation." ' " (*Ibid.*) The court in *Harris Painting*, *supra*, 239 Cal.App.4th at page 1220, adopted that approach.[14]

Vought now contends that the court abused its discretion in failing to find it the prevailing party based on a practical evaluation of the "litigation as a whole" (*Harris Painting*, *supra*, 239 Cal.App.4th at p. 1223). Vought notes its net monetary recovery, the court's finding that it was not reasonable for Stock to withhold for four months the $20,000 he admitted was "uncontested", and the purpose of prompt-payment statutes (see *United Riggers*, *supra*, 4 Cal.5th at p. 1092 ["State policy strongly supports liberally construing this law for the benefit of those it is intended to protect"]). While those factors might support an award of fees, they are counterbalanced by the court's finding that each party acted in good faith, if at times unreasonably; Vought's failure to prove that Stock violated section 8800; and that both parties recovered approximately half of what they sought. On this record, the

---

[14] *Harris Painting* and *Brawley* both involved other prompt-payment statutes, but those statutes had fee provisions essentially identical to section 8800, subdivision (c). (See *Harris Painting*, *supra*, 239 Cal.App.4th at p. 1219, quoting Bus. & Prof. Code, § 7108.5, subd. (c) ["[i]n any action for the collection of funds wrongfully withheld, the prevailing party shall be entitled to his or her attorney's fees and costs"]; *Brawley v. J.C. Interiors, Inc.*, *supra*, 161 Cal.App.4th at p. 1137, quoting Civ. Code, former § 3260, subd. (g) [same].)

14

court did not exceed the bounds of reason in concluding that neither was a prevailing party entitled to recover its attorney fees.[15]

### 3. *Vought is the prevailing party entitled to recover its costs under Code of Civil Procedure section 1032.*

Subdivision (a)(4) of Code of Civil Procedure section 1032 defines the prevailing party for the purpose of recovering routine costs in a civil action. " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court . . . ." (*Ibid.*)

Vought is unquestionably "the party with a net monetary recovery," specified in the first sentence. It recovered $61,000, plus interest. "It is clear from the statutory language that when there is a party with a 'net monetary recovery' (one of the four categories of prevailing party), that party is entitled to costs as a matter of right; the trial court has no discretion to order [otherwise]." (*Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1198.)

In rejecting Vought's claim that it was the prevailing party under subdivision (a)(4) of Code of Civil Procedure section 1032, the judge hearing the matter stated, "[The trial judge] made specific fact-findings that went beyond a mere judgment for monetary relief in favor of one party or the other. . . . [A]mong those findings, [the trial judge] determined that neither side was a 'prevailing party.' [This] finding was entirely consistent with [a court's] discretion under Code of Civil Procedure section 1032(a)(4) . . . ." The court did not cite, nor has Stock, any authority holding that a party "recovers other

---

[15] The parties' contract did not include an attorney-fee provision.

than monetary relief," conferring discretion on the court under the second sentence of subdivision (a)(4) to determine the prevailing party, merely by securing favorable findings or reducing the setoff claimed by the opposing party. Such does not constitute "relief" under subdivision (a)(4). Only Vought secured a monetary recovery, albeit for less than the full amount it sought. Vought therefore was the prevailing party entitled to costs as a matter of law because it secured a "net monetary recovery," and the court lacked discretion to rule otherwise.

Thus, the court erred in striking Vought's cost memorandum, and the matter must be remanded for the trial court to consider any objections to the specific amounts requested.

**4. *The Evidence Did Not Compel a Different Finding as to Delay.***

As noted, the project's completion was delayed by 178 days, from February 11 to August 7, 2020. The court found 98 days of that delay due to Vought's failure to investigate how it would complete the railings installation until January 24, 2020, or 128 days after work on the project began. The court found that the contractor should have begun to address the issue within 30 days of starting work. Vought now contends that "[b]ecause Stock himself delayed the project and made it impossible to finish by the February 2020 target," the court was required to dismiss his liquidated damages claim.

Vought cites expert testimony that the contract called for Stock to perform the role of architect; that the contract did not include complete design drawings for the railings; that Vought could not have installed the railings with the information available on February 15, 2020; and that once architectural drawings were available, it was necessary to generate shop drawings to fabricate the railings. Vought also contends that Stock added a new scope of work to the project "in January 2020" that involved tiling the stairs, which affected the design of the railings to be attached to those stairs;

16

that Stock did not deliver a tiling design until February 25; and that he did not sign a change order for the tiling until March 13.

The common flaw in these arguments is that they concern conduct by Stock that occurred largely or entirely *after*, and was causally unrelated to, the 98-day period from October 18, 2019, to January 24, 2020, during which the court found that Vought unreasonably failed to begin addressing the railings issue. The court found all delay after January 24, 2020 to be the fault of neither party. Even if Vought's evidence compelled a finding that all the post-January 24 delay was the fault of Stock, that would not undermine the finding that Vought's 98-day delay in beginning to address the railings issue delayed the project's ultimate completion by 98 days.

Vought contends that *Peter Kiewit Sons' Co. v. Pasadena City Junior College Dist.* (1963) 59 Cal.2d 241 compels dismissal of Stock's cross-claim. That case held that where late completion of a project "was caused by matters beyond [a contractor]'s control and was entirely excusable," liquidated damages were unavailable. (*Id.* at p. 244.) But the court here found the late completion due partly to matters within Vought's control, and thus only partly excusable. Vought also cites *Howard J. White, Inc. v. Varian Associates* (1960) 178 Cal.App.2d 348, which upheld dismissal of a liquidated damages claim on similar grounds, but there, too, the court did not attribute any of the delay to the contractor (*id.* at p. 355). The trial court here correctly held that Vought was not relieved of the obligation to pay liquidated damages for the delay that it caused even though it was not responsible for the entire delay.

### 5. *Vought Is Entitled to Foreclosure of Its Mechanic's Lien*

The court did not resolve Vought's cause of action to foreclose on its mechanic's lien. Vought contends the court erred in failing to adjudge a lien on the property in the sum of $78,241.57 plus interest, and to order

foreclosure, as Stock raised no defense to the lien.[16] Stock responds that the judgment is for a lesser amount ($77,870.70) than the requested lien. But if a lien is excessive in amount, absent evidence of fraud the court should simply order it reduced to the amount due. (*Basic Modular Facilities, Inc. v. Ehsanipour* (1999) 70 Cal.App.4th 1480, 1485.)

Vought proved the elements of a cause of action to foreclose on a mechanic's lien: the fact that its labor, services, and materials were used in a work of improvement, the reasonable value of its contribution, and the date the work was complete. (*Basic Modular Facilities, Inc. v. Ehsanipour¸ supra*, 70 Cal.App.4th at p. 1485.) It is entitled to a judgment ordering foreclosure on the lien—subject, of course, to Stock's right of redemption (Civ. Code, § 2903) and to Vought's duty to credit against the lien any payment received pursuant to its personal judgment against Stock (*id.*, § 8468, subd. (b)).

## DISPOSITION

The judgment is affirmed insofar as it awards Vought the principal sum of $61,105.45 plus contractual prejudgment interest through December 10, 2021 ($16,765.25). The order striking Vought's cost memorandum is reversed. The matter is remanded so that the trial court may award Vought contractual prejudgment interest through the date of entry of a revised judgment, award it routine litigation costs pursuant to Code of Civil Procedure section 1032, subdivision (a)(4), and order foreclosure on Vought's mechanic's lien. Vought shall recover its costs of the proceedings in this court.

---

[16] Stock contended below that the lien was unenforceable because it had been recorded prematurely in July 2020, before the substantial completion date of August 7, 2020. The trial court did not find the lien unenforceable for that reason, and Stock does not renew that argument on appeal.

                                        POLLAK, P. J.

WE CONCUR:

BROWN, J.
GOLDMAN, J.

| | |
|---|---|
| Trial court: | Alameda County Superior Court |
| Trial judge: | Honorable Noel Wise and Michael Markman |
| Counsel for plaintiff and appellant: | Mark N. White |
| Counsel for defendant and respondent: | LEPERA + ASSOCIATES, PC<br>Joseph A. Lepera<br>Patrick A. Hormillosa<br>Donel R. Lopez |